In re Harry A. JOHNSON, Jr., Debtor.

**Bankruptcy No. 3–89–1457.**

United States Bankruptcy Court,
D. Minnesota,
Third Division.

Sept. 27, 1989.

Michael L. Meyer, Robins, Kaplan, Miller & Ciresi, Minneapolis, Minn., for debtor.

Michael B. LeBaron, Larkin, Hoffman, Lindgren & Daly, Ltd., Minneapolis, Minn., for Vernon Beck & Associates, Inc.

MEMORANDUM TO ORDER OF SEPTEMBER 15, 1989, RE: MOTION OF VERNON R. BECK AND VERNON BECK & ASSOCIATES, INC. FOR RELIEF FROM STAY

GREGORY F. KISHEL, Bankruptcy Judge.

On September 15, 1989, this Court entered an order denying the motion of Vernon R. Beck ("Beck") and Vernon Beck & Associates, Inc. (collectively "Movants") for relief from stay. This memorandum is entered pursuant to FED.R.CIV.P. 52(a) and BANKR.R. 9014, to set forth the Findings of Fact and Conclusions of Law upon which that order is premised.

Debtor filed a voluntary petition under Chapter 11 of the Bankruptcy Code in this Court on April 21, 1989. Debtor is Minneapolis-area plastic surgeon who has also been extensively involved in commercial land development activity and in hotel development and management. Prior to 1987, Movants were closely affiliated with Debtor in the development, financing, and management of several hotels and other large real estate projects. Debtor and Beck organized Pineapple Management Company ("Pineapple") to manage Debtor's several hotels; Beck became a minority shareholder in Pineapple and its President and Chief Executive Officer. In the spring of 1987, Beck's day-to-day employment with Pineapple ceased, as did Movants' involvement with Debtor's other real estate and development concerns.

Two lawsuits resulted, both venued in Hennepin County District Court. Beck commenced suit against Pineapple and Debtor. In his complaint, he prayed for a declaratory judgment establishing the existence of an employment agreement between himself and Pineapple, its breach by Debtor and Pineapple, and Debtor's personal guarantee of it, and for an award of actual and punitive damages for the breach of that contract in the sum of $1,250,-000.00. Debtor commenced the other suit against Vernon Beck and Associates, Inc., upon a theory of tortious interference with contractual relations.[1] The Hennepin County District Court apparently has consolidated these two lawsuits for all further proceedings. Movants have demanded a trial by jury.

Movants now seek relief from the automatic stay of 11 U.S.C. § 362(a)(1), to allow them to proceed to litigate and try the two lawsuits. They cite this Court's disposition of a similar motion in a related case, *In re Mid-City Hotel Associates*, 114 B.R. 634[2] which resulted in a May 12, 1989 order granting the creditor-movant in that case relief from stay to proceed to judgment in Hennepin County District Court litigation for breach of a hotel management contract. Debtor opposes the motion, citing a number of differences in the procedural posture of the state-court litigation in each Chapter 11 case, and arguing that this Court should hear and determine certain proceedings regarding the allowability of Movants' claim in this case before the state-court litigation is allowed to proceed.

The automatic stay of 11 U.S.C. § 362(a)(1), of course, presently restrains Movants from proceeding to trial against Debtor. *In re Joe DeLisi Fruit Co.*, 11 B.R. 694, 696 (Bankr.D.Minn.1981). Movants seek relief from stay pursuant to 11 U.S.C. § 362(d)(1), which allows the Bankruptcy Court to terminate the automatic stay "for cause." In the case of a relief-from-stay motion in which a creditor seeks leave to continue pending state-court litigation against the debtor, the decision whether to terminate the stay is discretionary with the Bankruptcy Court. *In re Castlerock Properties*, 781 F.2d 159, 163 (9th Cir. 1986); *In re Holtkamp*, 669 F.2d 505, 507 (7th Cir.1982). The decision is made on a case-by-case basis, on the unique circum-

---

1. While Debtor's counsel placed a copy of the first amended complaint in *Beck v. Johnson* into the record for this motion, neither counsel placed any pleadings from *Johnson v. Vernon Beck and Associates of Florida, Inc.* into the record. The only indication of record as to the theory of the second lawsuit is Movants' counsel's statement at the hearing.

2. Debtor is one of the general partners in Mid-City Hotel Associates.

stances of each case. *In re Castlerock Properties*, 781 F.2d at 163; *In re Lahman Mfg. Co., Inc.*, 31 B.R. 195, 198 (Bankr. D.S.D.1983). Relevant circumstances may include

1. Whether insurance coverage with a duty of defense is available to the debtor or the estate, or, conversely, whether the conduct of the defense will impose a financial burden on the debtor or the estate, *In re Holtkamp*, 669 F.2d at 508–09; *In re McGraw*, 18 B.R. 140, 141–42 (Bankr. W.D. Wis.1982);

2. Whether judicial economy favors the continuation of the action in the tribunal in which it was commenced, to fix and liquidate the claim which then may be made against the debtor's estate, *In re Holtkamp*, 669 F.2d at 508, and to avoid a multiplicity of suits and proceedings involving the same subject matter, *In re Central Hobron Assoc.*, 36 B.R. 106, 108 (Bankr.D.Haw.1983);

3. Whether the state-court litigation has progressed to trial-readiness, with the likelihood that investment of resources in trial preparation would be wasted if trial were deferred, *In re Holtkamp*, 669 F.2d at 508–09; and *In re Fiedler*, 34 B.R. 602, 604 (Bankr.D.Colo.1983);

4. Whether the issues presented are governed solely by state law, or should be adjudicated by a specialized tribunal with expertise in their subject matter, *In re Lahman Mfg. Co., Inc.*, 31 B.R. at 198;

5. Whether the litigation involves other parties over whom the Bankruptcy Court lacks jurisdiction, and whether full relief may be accorded to all such nondebtor parties without the debtor's presence in the lawsuit, *In re Fiedler*, 34 B.R. at 604;

6. Whether the creditor has a probability of success on the merits, *In re Bock Laundry Machine Co.*, 37 B.R. 564, 566 (Bankr. N.D. Ohio 1984);

7. And, as this Court now recognizes, whether the interests of the debtor and the estate would be better served by the resolution of threshold bankruptcy-law issues in the Bankruptcy Court before the court and the parties address the issue of the forum where the claim against the debtor is to be fixed and liquidated.

◼ In general, the Court must make two determinations: first, whether allowing the litigation to proceed will result in "no great prejudice" to the debtor and the estate; and, second whether a balancing of the respective hardships which would result from the grant or the denial of stay relief favors the debtor or the creditor. *In re Holtkamp*, 669 F.2d at 507; *In re Harris*, 85 B.R. 858, 960 (Bankr.D.Colo.1988); *In re Bock Laundry Machine Co.*, 37 B.R. at 567; *In re McGraw*, 18 B.R. at 141–42. The Court and the parties should always bear in mind that

[t]he mere filing of a petition in bankruptcy cannot, in and of itself, erase a plaintiff's claim, their [sic] opportunity to litigate, or the fact that a debtor may be liable to the plaintiff in some amount.

*In re Bock Laundry Machine Co.*, 37 B.R. at 567.

◼ Movants rely almost exclusively on this Court's disposition in *Mid–City Hotel Associates* for their assertion that the Court must grant their motion. This argument is not fundamentally inappropriate— though it necessarily focuses the inquiry solely on the third factor noted above.

Certain superficial aspects of the status of the state-court lawsuits and the debtor's reorganization efforts are common to both cases. Both cases involve state-court contract and business-tort litigation which is factually and legally complex, arising out of long-term business and contractual relationships. In both lawsuits, the debtor's opponent had requested an award of damages in the millions of dollars. Both lawsuits had been pending for over a year when the respective debtors filed for Chapter 11. In both cases, the opponent's success in the lawsuits would have given it a massive claim against the Chapter 11 debtor's estate, which then might dominate the class of unsecured creditors under any plan

of reorganization. Both claimants had good reasons to argue for the prompt fixing and liquidation of their claims, if for no reason other than to avoid prejudicing their right to vote to accept or reject the plan. It seemed clear that both claims would have to be fixed and liquidated before the respective debtors could formulate and propose their reorganization plans. The debtors in both cases argued that this Court could and should determine the litigants' respective rights in the context of proceedings on objections to the opponents' claims; however, the obvious complexity of the issues, and the status of this Court's docket, portended a substantial burden on this Court were it to assume full jurisdiction over those issues.

However, in the last instance, the posture of the litigation in the present case is materially different. Thus, the Court has denied Movants' motion for relief from stay, pending the resolution of certain preliminary bankruptcy-law issues in this Court. This result is appropriate for several reasons.

While discovery in the state-court actions was not complete in either case, the record indicates that discovery is much less advanced in the Beck/Johnson litigation than was the case in the Mid–City Hotel litigation. Though Movants say they are ready to proceed to trial, Debtor does not—and it does not seem that Movants are anywhere near the state of trial-readiness that the claimants in the Mid–City Hotel litigation had achieved.

Too, the trial judge in the Mid–City Hotel litigation had already set trial for a date certain in July 1989, reserving a three-week block of time. Were that setting to have been stricken, a new setting was not possible for any date earlier than late spring to summer, 1990, because of the Hennepin County District Court's "block assignment system." Here, the record indicates that the Beck/Johnson litigation has been set for trial for mid-October, 1989, but only for a "second priority" setting. More significantly,[3] the state court assigned a trial date only after Movants' trial counsel contacted the trial judge *on the date of the hearing on Movants' motion for relief from stay* and requested it.

In general, then, Movants' asserted right to an early trial and decision on the litigation after completion of discovery will not be as prejudiced by a continuation of the automatic stay as that of the claimants in the Mid–City Hotel litigation promised to be. Movants do not have as great a current investment of time and resources in their litigation as did the claimants in *Mid–City Hotel*, and will be less prejudiced by a delay of some months to allow their claim to be more definitively positioned in Debtor's reorganization.

The burden which continued litigation would impose on Debtor's estate is also relevant. Though this is a very large Chapter 11 case, the record in other proceedings indicates that accruing expense demands on Debtor's estate have kept it cash-poor. While this was also the case in *Mid–City Hotel Associates*, the more advanced state of that litigation meant that future litigation costs would not achieve the magnitude that they would here. This difference also cuts against Movants' motion.

The final relevant circumstance—and the one which has decisively structured the disposition of this motion—is Debtor's assertion that 11 U.S.C. § 502(b)(7)[4] places a

---

**3.** and more a commentary on Movants' sense of gamesmanship, probably, than an indication of the trial-readiness of their case

**4.** The relevant statutory language is as follows:

  (b) ... [I]f [an] objection to a claim is made, the court, after notice and a hearing, shall determine the amount of such claim ... as of the date of the filing of the petition, and shall allow such claim in such amount except to the extent that—

  .    .    .    .    .

  (7) if such claim is the claim of an employee for damages resulting from the termination of an employment contract, such claim exceeds—

    (A) the compensation provided by such contract, without acceleration, for one year following the earlier of—

      (i) the date of the filing of the petition; or

"cap" on the amount of Movants' allowable claim against the bankruptcy estate, regardless of the aggregate amount of the money judgment which it might recover in state court. Debtor has requested that this issue be decided first, before the propriety of determining and liquidating Debtor's liability is addressed.

In oral argument, Movants have addressed this substantive issue on its merits, attempting to derail the suggested procedure by raising at least two arguments against the applicability of § 502(b)(7) to their claim.[5] However, this apparently is a case of first impression in this District.[6] Counsel have neither fully briefed the issue, nor presented an adequate factual basis to support a determination on it. From the standpoint of conserving estate assets, resolution of the § 502(b)(7) issue before Movants' claims are addressed on their merits makes much sense. If all or a number of Movants' different claims are in fact limited in their allowability by § 502(b)(7), and Movants' participation in and recovery from this case is accordingly limited, the parties should have that much more incentive to enter into meaningful settlement negotiations. This encouragement to settlement would in turn further the case-administration goals of both the Hennepin County District Court and this Court.

Thus, the Court has concluded that the parties should first present the threshold issue under 11 U.S.C. § 502(b)(7) to this Court. After the Court has decided that issue, and if the parties have not settled their dispute on the merits, Movants may renew their motion for relief from stay—with a more precise, accurate, and timely documentation of the actual and potential position of this lawsuit on the Hennepin County District Court trial calendar.

■ This leaves the question of the procedure by which the parties are to join the § 502(b)(7) issue. Debtor's counsel has suggested that the Court require Movants to file a proof of claim, and then set an expedited deadline for Debtor to formally object to the allowance of that claim in any amount beyond that allowable under § 502(b)(7). Movants did file a proof of claim in this case on August 28, 1989, in the amount of $2,500,000.00 [7].

This procedure, however, could lead this Court to become entangled in the substantive merits of Movants' claim, and might result in the procedural confusion of two successive claim objections, one based on the "cap" and one to the merits. Too, the relative complexity of even the § 502(b)(7) issue suggests that it would be more appropriate to address it by a procedure more inherently involved than that in claims objections.

Thus, the Court has required Debtor to commence an adversary proceeding for declaratory relief on the applicability of § 502(b)(7), pursuant to BANKR.R. 7001 —a procedure which should not jeopardize either party's further strategic options for the fixing and liquidation of Movants' claim. The parties may present the

---

(ii) the date on which the employer directed the employee to terminate, or such employee terminated, performance under such contract; plus

(B) any unpaid compensation due under such contract, without acceleration, on the earlier of such dates;

5. The first argument (Movants were not direct employees of Debtor, and their claim against Debtor arises solely out of his personal guarantee of Pineapple's obligation; thus, the direct employer-employee relationship necessary to trigger § 502(b)(7) is not present) is more facially colorable than the second (§ 502(b)(7) is limited solely to cases where a debtor rejects an employment contract post-petition under the authority of 11 U.S.C. § 365(a)).

6. After this Court granted relief from stay in *In re Mid–City Hotel Associates,* that debtor brought a motion for an order determining the applicability of § 502(b)(7) to the claimant's claim. However, the parties then entered into a comprehensive settlement of the state-court litigation and the treatment and satisfaction of the claimant's claim, mooting the motion before the hearing on it.

7. The effect of this action on Movants' assertion of a right to trial by jury as a partial basis for their motion for relief from stay is left for another day. *See Granfinanciera S.A. v. Nordberg,* —— U.S. ——, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989), which seems to revive the old Bankruptcy Act construct of "jurisdiction by ambush" with a vengeance.

§ 502(b)(7) issue to the Court via cross-motions for summary judgment in that adversary proceeding, and, after the Court has made its determination, any remaining procedural and substantive issues revolving around Movants' claims may be raised and resolved as appropriate.