**In re TRICARE REHABILITATION SYSTEMS, INC., Debtor.**

**Diana A. SMITH, Movant,**

v.

**TRICARE REHABILITATION SYSTEMS, INC., Respondent.**

**Bankruptcy No. 94–01168–RCF–11.**

United States Bankruptcy Court, N.D. Alabama, Southern Division.

June 16, 1994.

Alton B. Parker, Jr., Birmingham, AL, for debtor.

Patricia T. Mandt and Jay Bender, Birmingham, AL, for movant.

Max Pope, Sr., Trustee.

Dennis Schilling, for Trustee.

## MEMORANDUM OPINION AND ORDER GRANTING
## MOTION FOR RELIEF FROM THE AUTOMATIC STAY
## FILED BY DIANA A. SMITH

BENJAMIN COHEN, Bankruptcy Judge.

This matter is before the Court on a Motion for Relief from the Automatic Stay filed

by Diana A. Smith, an unsecured creditor of the Debtor, Tricare Rehabilitation Systems, Inc.[1] Ms. Smith is also the plaintiff in a pending breach of contract action and a pending fraud action, both filed in the state Circuit Court of Jefferson County, Alabama under the title *Smith v. Tricare Rehabilitation Systems, Inc., et al.,* case no. CV 92–2093. The Debtor is the defendant in both of the actions along with John T. Sumner and George B. Warren, both non-debtor officers and directors and owners of Tricare, who are defendants in the fraud action only. The Movant seeks relief from the automatic stay to proceed with the state court actions.[2] Based on the facts and the reasons stated below, the Court finds that the automatic stay should be lifted and that the movant should be allowed to proceed in state court.

In the bankruptcy court the Debtor is represented by Alton B. Parker, Jr.[3] The trustee Max Pope, Sr. is represented by W. Dennis Schilling. In this Court and in the state court, the movant is represented by Patricia T. Mandt and Jay R. Bender. A hearing was held on the Motion for Relief from the Automatic Stay on May 12, 1994 at which Ms. Mandt and Mr. Bender appeared for the movant and Mr. Schilling appeared for the trustee. No one appeared for the Debtor but counsel for the trustee represented that along with the trustee, the debtor opposed the motion. No testimony was offered at the hearing, although counsel stipulated to certain facts. From those stipulations, and from state court pleadings entered into evidence over the trustee's objection, the Court finds that the material facts necessary to decide this matter are not in dispute.

## I. FACTS

Ms. Smith was employed by Tricare on July 1, 1991 pursuant to an agreement negotiated with Mr. Sumner and Mr. Warren. The agreement, which was executed on May 31, 1991, provided in part that Ms. Smith would be issued an equity interest in Tricare if after six months it was determined that her employment should continue. That determination was to be made by Mr. Sumner and Mr. Warren based on objective performance standards that were to be given to Ms. Smith in writing within 30 days from the date her employment began. Ms. Smith contends that she never received her written performance standards nor her equity interest in Tricare and that her employment with Tricare was terminated on February 20, 1992.[4]

On March 13, 1992 Ms. Smith filed a lawsuit in the Circuit Court of Jefferson County, Alabama, against Tricare, Mr. Warren and Mr. Sumner. The lawsuit, as subsequently amended, alleges breach of contract and fraud. A jury trial was demanded. The lawsuit is set for trial on August 15, 1994 and is the first case set on the state court's docket.[5] Discovery has been completed.

---

1. This case No. 94–01168–RCF–11 is assigned to Judge Clifford Fulford of this Division. Because Ms. Patricia T. Mandt, counsel for the movant, and Judge Fulford have litigation in common outside this Court, and because Ms. Mandt was called as a witness in the matter of this Motion for Relief From the Automatic Stay, Judge Fulford asked that another judge hear this Motion. Assuming that Ms. Mandt will not be a witness in any other hearing in this case, Judge Fulford will, because of the ruling to grant relief from the stay, continue to hear all other matters.

2. Of course the Movant does not need relief from the stay to proceed against the non-debtor principals and counsel for the Movant represented that the Plaintiff will proceed against those individuals regardless of whether the stay is lifted as to the Debtor corporation.

3. Counsel for the Debtor has not filed an application for employment.

4. The factual assertions in the above paragraph are paraphrased from the state court pleadings and are repeated for the purpose of outlining the factual framework of the controversy between the parties that is currently in litigation before the state court. This Court offers no judgment regarding the truth or accuracy of those allegations. Neither party to the motion for relief presented any testimony at the hearing on the motion and the matter was submitted on the record in this case, the arguments and stipulations of counsel and exhibits admitted, which consist of certified copies of documents filed in Civil Action No. CV92–02093 pending in the Circuit Court for the Tenth Judicial Circuit of Alabama.

5. The trial of Ms. Smith's lawsuit was originally set for January 31, 1994 and reset for May 9, 1994. A continuance of the May trial was required because counsel for the defendants was scheduled to try several other cases on the same

The parties have exchanged witness and trial exhibit lists. Partial summary judgment was entered by the state court as to the breach of contract count against the individual defendants. Remaining to be tried is the breach of contract action against Tricare and the fraud action against all of the defendants. The fraud count is based on the contention that Mr. Warren and Mr. Sumner never intended to provide written, objective performance standards to Ms. Smith and never intended to issue her an equity interest in Tricare. The Debtor's liability on the fraud action, if any, would be vicarious, based on the activities of Mr. Warren and Mr. Sumner.[6] Until the bankruptcy was filed, the Debtor was represented by counsel representing Mr. Warren and Mr. Sumner. And there appears to be a complete identity of issues between the defense of the Debtor and these officers. Because of prior trial settings, there has already been significant preparation. *See* note 19 below.

date. The August trial setting was coordinated by the state court with the cooperation of counsel for Ms. Smith and counsel for the defendants. Counsel for Ms. Smith indicates that there is no scheduling conflict that would preclude the availability of any of the parties and counsel involved in the lawsuit if trial is held on August 15, 1994.

6. Paragraph "THREE" of the state court's order disposing of the defendants' motion for summary judgment provides the following: "The parties agree that promissory fraud is the only fraud issue in this case."

7. *In re Wood,* 548 F.2d 216 (8th Cir.1977); *In re Unanue–Casal,* 159 B.R. 90 (D.P.R.1993); *In re Universal Life Church, Inc.,* 127 B.R. 453 (E.D.Cal.1991), *aff'd,* 965 F.2d 777 (9th Cir. 1992); *Broadhurst v. Steamtronics Corp.,* 48 B.R. 801 (D.Conn.1985); *In re Harris,* 7 B.R. 284 (S.D.Fla.1980); *In re Revco D.S., Inc.,* 99 B.R. 768 (N.D.Ohio 1989); *In re America West Airlines,* 148 B.R. 920 (Bkrtcy.D.Ariz.1993); *In re Anton,* 145 B.R. 767 (Bkrtcy.E.D.N.Y.1992); *In re Murray Industries, Inc.,* 121 B.R. 635 (Bkrtcy. M.D.Fla.1990); *In re Saunders,* 103 B.R. 298 (Bkrtcy.N.D.Fla.1989); *In re Parkinson,* 102 B.R. 141 (Bkrtcy.C.D.Ill.1988); *In re Todd Shipyards Corp.,* 92 B.R. 600 (Bkrtcy.D.N.J.1988); *In re McGuirt,* 61 B.R. 974 (Bkrtcy.S.D.Tex.1986); *In re Newport Offshore, Ltd.,* 60 B.R. 348 (Bkrtcy. D.R.I.1986); *In re Yaffe,* 58 B.R. 26 (Bkrtcy.D.C. 1986); *In re Unioil,* 54 B.R. 192 (Bkrtcy.D.Col. 1985); *In re Westwood Broadcasting, Inc.,* 35 B.R. 47 (Bkrtcy.D.Haw.1983); *In re Fielder,* 34 B.R. 602 (Bkrtcy.D.Col.1983); *In re Hoffman,* 33 B.R. 937 (Bkrtcy.W.D.Okl.1983).

## II.  ISSUE

■  Over two years after Ms. Smith filed her lawsuit, an involuntary petition in bankruptcy was filed against Tricare on April 25, 1994, resulting in a stay of the continued prosecution of that lawsuit. Section 362(d) of Title 11 of the U.S.Code provides that the bankruptcy court may grant relief from the automatic stay for "cause." "Cause" for granting relief from the stay may exist if the equities in a particular case dictate that a lawsuit, or some other similar pending action, should proceed in a forum other than the bankruptcy court for the purpose of liquidating the claim upon which the lawsuit is premised.[7] The only issue is whether "cause" exists under Section 362(d).

## III.  BALANCING THE EQUITIES

■  In determining whether this lawsuit should continue in the forum in which it was

Congress intended that the stay be lifted to allow proceedings to continue in forums other than the bankruptcy court under appropriate circumstances, as is explained below:

[I]t will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from any duties that may be handled elsewhere.

H.R.Rep. No. 595, 95th Cong., 1st Sess. 341 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 50 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5836, 6297. "Cause" is further explained as:

A desire to permit an action to proceed to completion in another tribunal may provide another cause. Other causes might include the lack of any connection with or interference with the pending bankruptcy case. For example, a divorce or child custody proceeding involving the debtor may bear no relation to the bankruptcy case. In that case, it should not be stayed. A probate proceeding in which the debtor is the executor or administrator of another's estate usually will not be related to the bankruptcy case, and should not be stayed. Generally proceedings in which the debtor is a fiduciary, or involving postpetition activities of the debtor, need not be stayed because they bear no relationship to the purpose of the automatic stay, which is debtor protection from his creditors. The facts of each request will determine whether relief is appropriate under the circumstances.

H.R.Rep. No. 595, at 340–344.

originated, rather than requiring the plaintiff to proceed solely by proof of claim in the bankruptcy proceeding, the bankruptcy court must balance the potential prejudice to the debtor, the bankruptcy estate, and to other creditors against the hardship to the plaintiff if she is not allowed to continue the lawsuit.[8]

Numerous considerations have influenced the balancing operation described in the many published bankruptcy opinions on this subject. Those considerations have been stated and restated in many forms and fashions, but are readily listed, and consistently and routinely followed. Cases often cited for a laundry list of those factors are *In re Johnson,* 115 B.R. 634 (Bkrtcy.D.Minn.1989), and *In re Curtis,* 40 B.R. 795 (Bkrtcy.D.Utah 1984).

The following factors are listed in the *Johnson* opinion:

1. Whether insurance coverage with a duty of defense is available to the debtor or the estate, or, conversely, whether the conduct of the defense will impose a financial burden on the debtor or the estate.

2. Whether judicial economy favors the continuation of the action in the tribunal in which it was commenced, to fix and liquidate the claim which then may be made against the debtor's estate, and to avoid a multiplicity of suits and proceedings involving the same subject matter.

3. Whether the state court litigation has progressed to trial-readiness, with the likelihood that investment of resources in trial preparation would be wasted if trial were deferred.

4. Whether the issues presented are governed solely by state law, or should be adjudicated by a specialized tribunal with expertise in their subject matter.

5. Whether the litigation involves other parties over whom the bankruptcy court lacks jurisdiction, and whether full relief may be accorded to all such nondebtor parties without the debtor's presence in the lawsuit.

6. Whether the creditor has a probability of success on the merits.

7. Whether the interests of the debtor and the estate would be better served by the resolution of threshold bankruptcy-law issues in the bankruptcy court before the court and the parties address the issue of the forum where the claim against the debtor is to be fixed and liquidated.

*In re Johnson,* 115 B.R. at 636.

The following factors are listed in the *Curtis* opinion:

1. Whether the relief will result in a partial or complete resolution of the issues.

2. The lack of any connection with or interference with the bankruptcy case.

3. Whether the foreign proceeding involves the debtor as a fiduciary.

4. Whether a specialized tribunal has been established to hear the particular cause of action and that tribunal has the expertise to hear such cases.

5. Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation.

6. Whether the action essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question.

7. Whether litigation in another forum would prejudice the interests of other creditors, the creditors' committee and other interested parties.

8. Whether the judgment claim arising from the foreign action is subject to equitable subordination under Section 510(c).

9. Whether the movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f).

10. The interest of judicial economy and the expeditious and economical determination of litigation for the parties.

11. Whether the foreign proceedings have progressed to the point where the parties are prepared for trial.

12. The impact of the stay on the parties and the balance of hurt.

8. *In re Unanue–Casal,* 159 B.R. at 100; *In re America West Airlines,* 148 B.R. at 923; *In re Anton,* 145 B.R. at 770; *In re Murray Industries, Inc.,* 121 B.R. at 637; *In re Parkinson,* 102 B.R. at 142; *In re Todd Shipyards Corp.,* 92 B.R. at 602; *In re Unioil,* 54 B.R. at 195; *In re Westwood Broadcasting, Inc.,* 35 B.R. at 48; *In re Hoffman,* 33 B.R. at 941.

*In re Curtis,* 40 B.R. at 799–800.[9]

■ After reconciling and combining the *Johnson* and the *Curtis* factors, *see* note 9 below, the Court finds that the criteria to consider in the present case are: (1) trial readiness; (2) judicial economy; (3) the resolution of preliminary bankruptcy issues; (4) cost of defense or other potential burden to the estate; (5) the creditor's chances of success on the merits; and (6) presence of third parties over which the bankruptcy court lacks jurisdiction. For identification, these factors will be referred to as Smith factors.

■ Since both parties to the litigation benefit if the case can be tried expeditiously, the bankruptcy court should also take into consideration which of the competing courts may be better suited to fully determine the issues involved in the case, either because of specialized knowledge or experience[10] or jurisdiction over third parties[11], and whether one of the competing courts is presently in a posture to try the case.[12] Furthermore, principles of judicial economy require that, without good reason, judicial resources should not be spent by duplicitous litigation, and that a lawsuit should only be tried once, if one forum with jurisdiction over all parties involved is available to fully dispose of all issues relating to the lawsuit.[13]

## A. Smith Factors Nos. One and Two: Trial Readiness and Judicial Economy

■ The party requesting relief from the automatic stay must, of course, first present

9. Johnson factor 1 relating to cost of defense to the estate or debtor correlates with Curtis factors 5, 7, and 12. Johnson factor 2 relating to judicial economy corresponds to Curtis factor 10. Johnson factor 3 relating to trial readiness is the same as Curtis factor 11. Johnson factor 4 relating to specialized expertise of the non-bankruptcy forum parallels Curtis factor 4. Johnson factor 5 relating to the presence of third parties over which the bankruptcy court lacks jurisdiction and Curtis factor 1 are substantially the same. Johnson factors 6 and 7 relating to the creditor's chances of success on the merits and the resolution of preliminary bankruptcy issues, respectively, may be relevant but have no corresponding Curtis factors.

Curtis factor 2 relating to the extent to which trial of the case in the non-bankruptcy forum will interfere with the progress of the bankruptcy case, is, of course, relevant, but has no corresponding Johnson factor per se. Since in the case at hand, the debtor was not, as to Ms. Smith, either a fiduciary or bailee, Curtis factors 3 and 6 have no application to the matter under consideration. Also, since Ms. Smith's situation will not result in a judicial lien and does not involve issues of equitable subordination, Curtis factors 8 and 9 are likewise not relevant. Under the combined and reconciled Johnson/Curtis factors, therefore, the considerations appropriate to the present case, are, basically, (1) trial readiness; (2) judicial economy; (3) the resolution of preliminary bankruptcy issues; (4) costs of defense or other potential burden to the estate; (5) the creditor's chances of success on the merits; and, (6) presence of third parties over which the bankruptcy court lacks jurisdiction.

10. This consideration involves Johnson factor 4 and Curtis factor 4. Ordinarily weighing in favor of relief from the stay, is the fact that this lawsuit involves primarily issues of state law. Since the state court should be more familiar and experienced with state law issues than the bankruptcy court, a determination of the issues involved in the litigation will not require the expertise of the bankruptcy judge. *In re Unanue–Casal,* 159 B.R. at 98; *In re Revco D.S., Inc.,* 99 B.R. at 777; *Broadhurst v. Steamtronics Corp.,* 48 B.R. at 802–03; *In re America West Airlines,* 148 B.R. at 925; *In re Parkinson,* 102 B.R. at 142; *In re Newport Offshore, Ltd.,* 59 B.R. 283, 286 (Bkrtcy.D.R.I.1986); *See also, In re Universal Life Church, Inc.,* 127 B.R. at 455 (Relief from stay granted to allow liquidation of tax claim in state tax court).

11. *See In re Revco D.S., Inc.,* 99 B.R. at 776; *Broadhurst v. Steamtronics Corp.,* 48 B.R. at 802; *In re Harris,* 7 B.R. at 286; *In re Anton,* 145 B.R. at 770; *In re Murray Industries, Inc.,* 121 B.R. at 636; *In re Parkinson,* 102 B.R. at 142–43; *In re Yaffe,* 58 B.R. at 28; *In re Unioil,* 54 B.R. at 194–95; *In re Westwood Broadcasting, Inc.,* 35 B.R. at 49; *In re Fielder,* 34 B.R. at 604; *In re Hoffman,* 33 B.R. at 941.

12. *See In re Unanue–Casal,* 159 B.R. at 98; *In re Universal Life Church, Inc.,* 127 B.R. at 455; *In re Revco D.S., Inc.,* 99 B.R. at 775; *Broadhurst v. Steamtronics Corp.,* 48 B.R. at 801; *In re Anton,* 145 B.R. at 770; *In re Murray Industries, Inc.,* 121 B.R. at 637; *In re Saunders,* 103 B.R. at 299; *In re Parkinson,* 102 B.R. at 142; *In re McGuirt,* 61 B.R. at 976; *In re Newport Offshore, Ltd.,* 59 B.R. at 286; *In re Yaffe,* 58 B.R. at 26; *In re Westwood Broadcasting, Inc.,* 35 B.R. at 49; *In re Fielder,* 34 B.R. at 604.

13. *See In re Unanue–Casal,* 159 B.R. at 97–98; *In re Universal Life Church, Inc.,* 127 B.R. at 455; *In re Harris,* 7 B.R. at 286; *In re Anton,* 145 B.R. at 770; *In re Murray Industries, Inc.,* 121 B.R. at 637; *In re America West Airlines,* 148 B.R. at 925; *In re Saunders,* 103 B.R. at 299; *In re Newport Offshore, Ltd.,* 59 B.R. at 285; *In re Yaffe,* 58 B.R. at 28; *In re Unioil,* 54 B.R. at 195; *In re Westwood Broadcasting, Inc.,* 35 B.R. at 49.

at least a prima facie showing of "cause."[14] This Ms. Smith has done. Her case is almost certain to be tried in state court in less than 3 months. The parties stipulated that significant preparation has already occurred. *See* note 19 below. Both camps are firmly entrenched, fully armored, well provisioned, and set for the fight. All of the issues in the case strictly involve Alabama state law. The state court judge is familiar with the allegations, parties, positions, and precise issues involved in the case, as well as the law which forms the framework for the resolution of those issues. Once liability is determined and damages are liquidated by the judgment of the state court, Ms. Smith can, of course, file her proof of claim along with other creditors in the bankruptcy case. Clearly, the state court is in the best posture to provide a relatively quick and complete consideration of all issues among all parties to the case while fully according to each, constitutional rights to due process and a trial by jury. Litigation of Ms. Smith's claim in the state court action will not hinder or impede administration of the bankruptcy estate, since Ms. Smith's lawsuit involves no property of the estate and any judgment rendered may only be enforced against the debtor by filing a claim in the bankruptcy court.[15]

### B. Smith Factor No. Three: The Resolution of Preliminary Bankruptcy Issues

Smith factor No. 3 is readily disposed of. The trustee has not indicated that there are preliminary bankruptcy issues that should be determined before Ms. Smith's claim is resolved and this Court is unaware of any.

### C. Smith Factor No. Four: Cost of Defense or Potential Burdens to the Estate

■ The burden is on the party opposing the motion for relief, the trustee in this instance, to show that allowing Ms. Smith's action to proceed against Tricare in state court will prejudice the debtor, the bankruptcy estate, and other creditors.[16] The trustee points primarily to the cost of defending the action.[17] The cost of defense is, standing alone, ordinarily considered an insufficient basis for denying relief from the stay.[18] The attorney for the trustee cites as evidence of potentially prejudicial defense costs the stipulation made by Ms. Smith's attorneys that they had expended in excess of $100,000 of otherwise billable time (the case is being handled on a contingent fee basis) already on the preparation of Ms. Smith's suit, and argues that for the trustee to effectively defend the state court suit, a comparable investment of time and effort must be made by the trustee and his counsel between now and the scheduled August 15 trial date.[19]

**14.** *In re Unanue–Casal*, 159 B.R. at 94; *In re Anton*, 145 B.R. at 769; *In re Todd Shipyards Corp.*, 92 B.R. at 602 n. 2; *In re Unioil*, 54 B.R. at 193.

**15.** *See In re Unanue–Casal*, 159 B.R. at 99; *In re Revco D.S., Inc.*, 99 B.R. at 777; *Broadhurst v. Steamtronics Corp.*, 48 B.R. at 803; *In re America West Airlines*, 148 B.R. at 923–24; *In re Anton*, 145 B.R. at 771; *In re Parkinson*, 102 B.R. at 143; *In re Todd Shipyards Corp.*, 92 B.R. at 604; *In re Newport Offshore, Ltd.*, 59 B.R. at 285; *In re Yaffe*, 58 B.R. at 28; *In re Unioil*, 54 B.R. at 195.

**16.** *In re Unanue–Casal*, 159 B.R. at 95; *In re Anton*, 145 B.R. at 769; *In re Todd Shipyards Corp.*, 92 B.R. at 602; *In re Unioil*, 54 B.R. at 194; *In re Hoffman*, 33 B.R. at 941.

**17.** The trustee also argues that the summary process for resolving claims in bankruptcy would be destroyed if this litigation is allowed to proceed as there would be a precedent effect on other litigation pending in this case; and, that, lifting the stay would have a harmful impact on cases this court will consider in the future. At the

hearing on this matter counsel discussed other possible state court litigation pending against the Debtor, but there is no evidence before the court on the nature, extent, timeliness or actual existence of those actions. Furthermore, as to both contentions, this Court is duty bound to consider the specifics of each motion for relief independently. "The facts of each request will determine whether relief is appropriate under the circumstances." H.R.Rep. No. 595, 95th Cong., 1st Sess. 343–44 (1977), reprinted in 1978, U.S.C.C.A.N. 5787, 6300; S.Rep. No. 989, 95th Cong.2d Sess., 52–3 (1978).

**18.** *In re Anton*, 145 B.R. at 770; *In re Todd Shipyards Corp.*, 92 B.R. at 602; *In re Unioil*, 54 B.R. at 195; *In re Westwood Broadcasting, Inc.*, 35 B.R. at 49; *In re Hoffman*, 33 B.R. at 941. *See also* note 26 below.

**19.** Specifically, the Movant and the trustee stipulated that Movant's counsel has committed at least $100,000 of billable hours to the state court litigation; the firm committed in excess of 200 hours for trial preparation time in January 1994;

In considering whether such comparable time may be involved in preparation of the Debtor's defense, a review of the state court documents admitted during the hearing on this matter, particularly the motion for summary judgment filed by the defendants and supporting documents, indicates that, up until the point the bankruptcy case was filed, Tricare was represented by the law firm of Yearout, Myers & Traylor of Birmingham. A defense on behalf of Tricare, as well as Mr. Warren and Mr. Sumner, has been prepared. There is an almost complete identity of issues between the defense necessary to the breach of contract action against Tricare and the defense presented to the fraud action against Mr. Warren and Mr. Sumner.[20]

■ By granting the defendants' motion for summary judgment as to the cause of action based upon breach of contract as to the individual defendants, the state court judge has necessarily determined that Mr. Warren and Mr. Sumner had the apparent authority to enter into the contract with Ms. Smith on behalf of Tricare. It appears that the only defense remaining to Tricare is that the contract has not been breached. The primary defense being promoted by Mr. Warren and Mr. Sumner to Ms. Smith's allegations of promissory fraud is that the contract has been honored and the plaintiff has received all that she is entitled to under the contract. As to the claim of fraud against Tricare, there is no indication of a defense separate from that of the individual defendants. According to Alabama case law, Tricare's liability for the fraud of its agents is vicarious only, and therefore, will be automatically imposed if the individual defendants are determined to be guilty.[21] Con-

versely, if the individual defendants are found not guilty of fraud, then judgment for Tricare must also be entered on that particular count of the complaint.[22] Excluding exemplary damages, the damages for the promissory fraud portion of Ms. Smith's lawsuit will at least include the damages that may be awarded based upon the breach of contract portion of the suit, although a defense may be made to the damages portion of the contract action based upon the liquidated damages clause in the contract.

Typically a Debtor who is involved in litigation or a trustee in bankruptcy who inherits such litigation, whether on the plaintiff or defendant side, hires the debtor's pre-bankruptcy counsel as special counsel to continue in the litigation. Because the trustee has not filed an application to employ any counsel for this purpose, there is uncertainty as to who presently represents the Debtor in the state court litigation. At the argument on this matter, counsel for the trustee stated that the trustee had decided not to retain the Yearout firm to continue because the trustee believed that there would be a conflict between the corporate Debtor and its officers and that current counsel for the trustee would represent the trustee, who in turn would represent the Debtor in the lawsuit. Considering the identity of issues involved in the defense of all defendants, this Court sees no apparent conflict of interest if the Yearout firm were to continue to represent both the corporate defendant and the individual defendants, as it has done since the beginning of the state court suit without objection or question from the judge involved in that case.[23] But that of course, is a decision the

the state court case is scheduled for trial on August 15, 1994; the fee arrangement for the movant's attorney is a contingency fee contract. These stipulations support the Movant's argument that the lawsuit has progressed to a point where it should remain in the state court.

20. A corporation may act only through its agents. *See Warwick Development Co. v. G.V. Corp.,* 469 So.2d 1270, 1276 (Ala.1985); *Home Indemnity Co. v. Anders,* 459 So.2d 836, 840 (Ala.1984).

21. *See Pacific Mutual Life Insurance Co. v. Haslip,* 553 So.2d 537, 541 (Ala.1989), *aff'd,* 499 U.S. 1, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991).

22. *See Barnes v. West Point Foundry & Machine Co.,* 441 F.2d 532, 533 (5th Cir.1971).

23. *See Phillips Medical Systems International B.V. v. Bruetman,* 8 F.3d 600, 606 (7th Cir.1993). Alabama Rule of Professional Conduct 1.13(e) provides that "[a] lawyer representing an organization may also represent any of its directors, officers, employees, members, shareholders or other constituents, subject to the provisions of Rule 1.7," governing conflicts of interest. *See also Aetna Casualty & Surety Co. v. United States,* 570 F.2d 1197, 1201 (4th Cir.1978); *Smith v. City of New York,* 611 F.Supp. 1080, 1088–89 (S.D.N.Y.1985); *McAlinden v. Wiggins,* 543 F.Supp. 1004, 1006 (S.D.N.Y.1982); Annot., *Rep-*

trustee must make and because the trustee has not filed the application to employ counsel for this purpose, the Court is not privy to the facts on which the trustee bases his conclusions. When an application is filed, as the court's authorization for current counsel for the trustee is restricted to employment for the sale of assets, the court may have an opportunity to consider the conflict question.

If the Yearout firm is retained, the cost of the litigation to the estate would be minimized. However, even if the Yearout firm cannot, or is not retained, current counsel for the trustee, if retained for this purpose, or new counsel should be able to build on the solid foundation that has been laid thus far and should require only a moderate investment of time reviewing the court file, reviewing depositions and other discovery, interviewing witnesses, and reviewing Alabama law, in order to be ready to participate, along with counsel for the individual defendants, in the defense of the state court suit.

■ The major difference in trying the case in the state court as opposed to trying the case in the bankruptcy court is striking the jury which should, considering that the nature of the issues involved here are not controversial, require relatively little additional time. The significant difference in trying the case in this Court rather than the state court is that the trustee would be without the enthusiastic participation of the individual defendants. In fact, this is a golden opportunity for Tricare to ride the coattails of highly motivated (by the specters of personal liability and exemplary damages) and

represented co-defendants who are prepared to shoulder the bulk of the defense load, but who will be substantially less motivated once their case is tried on August 15.[24] Conversely, if the state court action proceeds without the participation of the debtor or trustee, and a verdict is rendered against the individual defendants, the trustee may have no basis for objection to the claim that will be filed by Ms. Smith in the bankruptcy case based upon that verdict.[25]

### D. Smith Factor No. Five: The Creditor's Chances of Success on the Merits

■ Without actually hearing the testimony that the state court will hear, it is virtually impossible for this Court to predict to what extent, if any, Ms. Smith will be successful.[26] The fact that the state court refused to grant summary judgment against Ms. Smith, however, certainly indicates that Ms. Smith has a fighting chance. In any event, it is unnecessary that all factors be found in favor of a party requesting relief from the stay before the stay may be lifted.[27]

### E. Smith Factor No. Six: Presence of Third Parties Over Which the Bankruptcy Court Lacks Jurisdiction

■ The Court finds that if relief from stay is granted and Ms. Smith is allowed to proceed in state court against Tricare, little prejudice will result to the bankruptcy estate or debtor; consequently, if the trustee contests Ms. Smith's right to recover from the

---

*resentation of Conflicting Interests as Disqualifying Attorney From Acting in a Civil Case*, 31 A.L.R.3d 715 (1993).

Because 11 U.S.C. § 327(c) does not disqualify an attorney from representing a debtor that the attorney has represented previously, and because an attorney that represents a corporation in bankruptcy while representing its principals is not per se disqualified under 11 U.S.C. § 327(a) as being an interested party, *see, TWI International, Inc. v. Vanguard Oil and Service Co.*, 162 B.R. 672 (S.D.N.Y.1994), Yearout, Myers & Traylor may be considered for employment as continued counsel for the debtor in the state court litigation.

**24.** *See In re Anton*, 145 B.R. at 770; *In re Parkinson*, 102 B.R. at 143; *In re Yaffe*, 58 B.R. at 28; *In re Unioil*, 54 B.R. at 195.

**25.** Counsel for the trustee indicated that the course of administration currently plotted by the trustee is for the liquidation of the assets of Tricare. In the event punitive damages are assessed against Tricare in the state court action, conversion to Chapter 7 may be advisable, since 11 U.S.C. § 726(a) requires the subordination of claims for punitive damages.

**26.** *In re Peterson*, 116 B.R. 247, 249–50 (D.Col. 1990).

**27.** *In re Laventhol & Horwath*, 139 B.R. 109, 117 n. 8 (S.D.N.Y.1992).

bankruptcy estate, then he can do it now, as part of the state court suit, just as easily as he can at some future time in this Court.[28] Indeed, prompt liquidation of Ms. Smith's claim in state court will expedite the administration of the bankruptcy estate and act to conserve the resources of the bankruptcy court.

Unlike the trustee, if Ms. Smith is denied relief from the stay, her choice is not now or later but now and later. The hardships that will or may result to her are apparent. If a verdict is not rendered against the individual defendants on the fraud count, Ms. Smith will be forced to try her case a second time in the bankruptcy court, with concomitant delay, additional personal expense, which according to the attorney for Ms. Smith has been substantial already.[29] If Ms. Smith is forced to try her case in the bankruptcy court, she will be denied her constitutional right to a trial by jury in her contract action, and while, ordinarily, the summary objection to claim process is essential to the smooth and expeditious administration of bankruptcy estates, a claimant's right to a jury trial should be accommodated if circumstances allow it to be done without substantial prejudice to estate administration.[30] Requiring Ms. Smith to try her fraud count against the individual defendants in state court and her breach of contract count in bankruptcy court will subject Ms. Smith to the danger of having verdicts rendered against her on both counts, when, had she been allowed to try both counts in the same forum, she may have been successful on at least one of the counts. The state court jury may believe that the employment contract was breached, but may render a verdict in favor of the individual defendants on the ground that there was no fraud in the inducement of the contract. The bankruptcy court may then, upon objection to Ms. Smith's claim, find that there was no breach of the employment contract and deny Ms. Smith's bankruptcy claim.[31]

## IV. CONCLUSION

Based upon the foregoing deliberation, this Court finds that there is cause under section 362(d) to grant the Movant's motion for relief from the stay and allow her to continue her state court lawsuit against the Debtor, provided that any judgment she may receive from the state court may be executed only by

---

**28.** *See In re America West Airlines,* 148 B.R. at 923–24; *In re Anton,* 145 B.R. at 770; *In re Parkinson,* 102 B.R. at 143; *In re Newport Offshore, Ltd.,* 59 B.R. at 285; *In re Yaffe,* 58 B.R. at 28.

Since there is no liability insurance coverage involved in the lawsuit made the basis of this motion, Curtis factor no. 10 and the first part of Johnson factor no. 1 are relevant to the extent that the cost of defense as well as the ultimate burden of whatever verdict the state court jury chooses to impose will be borne by the bankruptcy estate, and will consequently impact other creditors whose respective distributions from the bankruptcy estate, or the potential therefore, will be reduced proportionately. However, as indicated by the cases cited at note 18 above, the cost of defending a lawsuit in another tribunal is generally considered an insufficient basis for denying relief from the stay. Also, the estate in this case must at some point defend Ms. Smith's cause of action, and this Court cannot find that the cost of defending the lawsuit will be substantially greater now in the state court than it would in the future in the bankruptcy court. Thus Curtis factors 7 and 12 (from the estate's perspective), as well as the second portion of Johnson factor 1 have been considered by this Court and do not weigh in favor of denying Ms. Smith's request for relief from the stay.

At the hearing on this motion, counsel briefly discussed the possible settlement of Ms. Smith's claim against Tricare. Once the trustee has had the opportunity to assess Ms. Smith's lawsuit and the alternatives available to the estate, he may determine to further pursue settlement of the claim, or that an active defense of Ms. Smith's lawsuit, separate from the defense offered by Mr. Sumner and Mr. Warren, is not economically justified. Whatever the trustee decides to do, he can do it now as economically as he can several months or years from now.

**29.** *See In re Anton,* 145 B.R. at 770; *In re Murray Industries, Inc.,* 121 B.R. at 637; *In re Parkinson,* 102 B.R. at 142; *In re Unioil,* 54 B.R. at 195; *In re Westwood Broadcasting, Inc.,* 35 B.R. at 49; *In re Hoffman,* 33 B.R. at 941.

**30.** *In re Hoffman,* 33 B.R. at 942.

**31.** *See In re Revco D.S., Inc.,* 99 B.R. at 776; *Broadhurst v. Steamtronics Corp.,* 48 B.R. at 802; *In re Harris,* 7 B.R. at 286; *In re Anton,* 145 B.R. at 770; *In re Parkinson,* 102 B.R. at 142–43; *In re Unioil,* 54 B.R. at 195; *In re Westwood Broadcasting, Inc.,* 35 B.R. at 49; *In re Fielder,* 34 B.R. at 604.

---

579

way of the filing of a proof of claim in this bankruptcy case.[32]

It is therefore **ORDERED, ADJUDGED, AND DECREED** that the Motion for Relief from the Automatic Stay is **GRANTED**.

**32.** The same result would probably be required as well under 28 U.S.C. § 1334(c)(2) which provides:

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction. Any decision to abstain or not to abstain made under this subsection is not reviewable by appeal or otherwise by the court of appeals under section 158(d), 1291, or 1292 of this title or by the Supreme Court of the United States under section 1254 of this title. This subsection shall not be construed to limit the applicability of the stay provided for by section 362 of title 11, United States Code, as such section applies to an action affecting the property of the estate in bankruptcy.

Pursuant to the Section 1334(c)(2), many bankruptcy courts have abstained from the trial of lawsuits brought against debtors and non-debtor codefendants and allowed those lawsuits to proceed in state court when, as in the case of Ms. Smith's lawsuit, strictly state law issues were involved and the lawsuits could proceed to trial promptly. See *Baxter Healthcare Corp. v. Hemex Liquidation Trust*, 132 B.R. 863 (N.D.Ill.1991); *In re Revco D.S., Inc.*, 99 B.R. 768 (N.D.Ohio 1989); *Mattingly v. Newport Offshore, Ltd.*, 57 B.R. 797 (D.R.I.1986); *Allen County Bank & Trust Co. v. Valvmatic International Corp.*, 51 B.R. 578 (N.D.Ind.1985); *In re Fulfer*, 159 B.R. 921 (Bkrtcy.D.Idaho 1993); *In re Cache, Inc.*, 71 B.R. 851 (Bkrtcy.S.D.Fla.1987); *In re McGuirt*, 61 B.R. 974 (Bkrtcy.S.D.Tex.1986).

No motion for abstention has been filed and this Court has disposed of the issues involved in the present motion pursuant to 11 U.S.C. § 362(d). This Court's conclusion that Ms. Smith's lawsuit, which involves purely state law issues that can be readily tried in state court, and which should be allowed to proceed is, however, bolstered by Section 1334(c)(2) which, at the very least, represents a strong expression of Congressional preference that, when possible and expedient, trials of lawsuits involving state law issues should be tried in familiar state forums, with attendant trappings of due process.