United States Court of Appeals,

Eleventh Circuit.

No. 94-4252.

In re Daniel BOONE and Sara Boone, Debtors.

COMMUNITY BANK OF HOMESTEAD, Plaintiff-Appellant,

v.

Daniel BOONE, Sara Boone, Defendants-Appellees.

May 23, 1995.

Appeal from the United States District Court for the Southern District of Florida. (No. 93-1152-CIV-SMA, Sidney M. Aronovitz, Judge.

Before COX and BLACK, Circuit Judges, and FAY, Senior Circuit Judge.

PER CURIAM:

Daniel and Sara Boone (the Boones) brought a bankruptcy adversary proceeding against Community Bank (the Bank), claiming that the Bank had tortiously interfered with the sale of the Boones' house. The bankruptcy court awarded the Boones actual and punitive damages. The district court affirmed the judgment, and the Bank appeals. Concluding that there is no federal jurisdiction over the claim, we reverse and remand with instructions to vacate the bankruptcy court's judgment and dismiss the claim for want of jurisdiction.

*Background*

In 1985, the Boones purchased a house in Homestead, Florida, with a $59,000 mortgage loan from the Bank. Three years later, the Bank lent $45,000 to the Boones' wholly owned corporation, Daniel Boone Farms, Inc. The Boones guaranteed the corporate loan. The guarantee was unsecured, but the home mortgage agreement contained

a "dragnet clause" that purported to secure not only the mortgage debt but also all future debts the Boones would owe the Bank. In June 1989, Daniel Boone Farms defaulted on the Bank's loan, making the Boones individually liable for the corporate debt.

Also in June 1989, the Boones contracted to sell their house to Mr. and Mrs. Douglas Ulmer for $91,000. A closing date was set for late July. A week after entering the contract to sell their house, the Boones individually filed a petition in bankruptcy under chapter 7. The mortgage debt at the time of filing was $53,000, and the Boones owed $45,783 on the guarantee.

Shortly before the scheduled closing on the sale of the Boones' house, the Bank sent the closing agent an "estoppel letter" informing the agent of the outstanding balance on the mortgage. Two days later, and only four days before closing, the Bank sent a second estoppel letter claiming $97,664 of the proceeds from the sale. The higher figure represented the sum of the mortgage debt and the debt on the corporate guarantee. The Bank claimed that the dragnet clause of the mortgage agreement effectively secured the debt owed on the guarantee.

Because it appeared from the estoppel letter that the Boones would receive no proceeds from the sale of their house, they refused to complete the closing. At the time of trial in the bankruptcy court, the house remained unsold, and the Boones continued to make mortgage payments on it. To that time, the Boones had paid about $10,000 in additional mortgage payments, homeowners' insurance, and property taxes because they had not sold the house as scheduled.

The Boones brought a bankruptcy adversary proceeding against the Bank, seeking a determination of the extent of the Bank's lien on their house, an order compelling the Bank to accept that amount in satisfaction of the lien, and compensatory and punitive damages for the Bank's tortious interference with the contract for the sale of their house. The tortious interference claim rests on Florida law. The bankruptcy court rejected the Bank's challenge to its jurisdiction over the state-law claim and conducted separate trials on liability and damages. The court awarded the Boones $10,199 in compensatory damages and $30,596 in punitive damages on their tortious interference claim.

The Bank appealed to the district court, challenging the bankruptcy court's jurisdiction to render judgment on the tort claim. Concluding that the tortious interference claim was a core matter "arising in a case under title 11," 28 U.S.C. §§ 157(b)(1), 1334(b), the district court affirmed. The court reasoned that the claim arose in a chapter 11 case because the claim arose after the Boones filed a petition in bankruptcy. The Bank appeals.

*Issue and Standard of Review*

The Bank contends that the district court had no bankruptcy jurisdiction over the Boones' state-law tort claim. [1] This court reviews de novo the district court's conclusions of law. *Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.),* 910 F.2d 784, 786 (11th Cir.1990).

*Discussion*

---

[1] The Bank raises other issues as well, but because of our disposition of the case on this issue we need not reach them.

Title 28, section 1334(b) creates federal jurisdiction over "civil proceedings arising under title 11 or arising in or related to a case under title 11." Thus, for federal bankruptcy jurisdiction to exist, a case must at minimum "relate to" a case under title 11. *Wood v. Wood (In re Wood),* 825 F.2d 90, 93 (5th Cir.1987).

> The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy.... An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

*In re Lemco,* 910 F.2d at 788 (quoting *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984)); *see also Celotex Corp. v. Edwards,* --- U.S. ----, ----, 115 S.Ct. 1493, ----, --- L.Ed.2d ---- (1995) (citing *Pacor, Inc.* with approval, although not explicitly adopting its relatedness test).

The Boones' claim against the Bank for intentional interference with the sale of their house falls outside even the broad sweep of section 1334(b) related-to jurisdiction. The Boones fail to proffer any effect that the outcome of the tortious interference claim could have on their bankruptcy estate. The conduct giving rise to the claim occurred after the petition in bankruptcy, and therefore the cause of action is not property of the estate. *See* 11 U.S.C. § 541(a). Accordingly, any damages would belong solely to the Boones. Moreover, because the Boones sought liquidation under chapter 7 rather than reorganization under chapter 11 or 13, the financial boon provided by any damage award would not affect their compliance with a reorganization plan. *Cf.*

*Celotex Corp.,* --- U.S. at ----, 115 S.Ct. at ---- (observing that bankruptcy jurisdiction may be broader in reorganization cases than in liquidation). Furthermore, nothing in the record indicates that any of the Bank's unsecured claims against the Boones were nondischargeable. The Bank thus can claim no setoff that would affect the size of the Bank's claims against the estate. *See* 4 *Collier on Bankruptcy* ¶ 541.05, at 541-24 (Lawrence P. King ed., 1995).

Rather than positing any effect that their tortious interference claim has on the bankruptcy estate, the Boones assert that the proceeding is a core proceeding, as defined in 28 U.S.C. § 157(b)(1), (2), for two primary reasons. First, they contend, the tort claim is a core proceeding because it was brought with two other core proceedings, one concerning the extent of the Bank's lien and another involving the dischargeability of the debt arising from the corporate guarantee. Second, according to the Boones, their role as debtors in the chapter 7 case makes the tortious interference claim a core proceeding.[2]

We reject both arguments. First, although the claim to determine the extent of the Bank's lien and the tortious interference claim will share the common factual issue of the effect of the dragnet clause, this "common issue[ ] of fact between

---

[2]The Boones also argue that their tortious interference suit is a core proceeding as defined in 28 U.S.C. § 157(b)(2)(*O* ): "[a] proceedin[g] affecting ... the adjustment of the debtor-creditor ... relationship." We disagree. Although the tort claim has an effect on the relationship between the Boones and the Bank, it does not affect the contracts that give rise to their debtor-creditor relationship. Thus, it does not "adjust" the debtor-creditor relationship in any way.

a civil proceeding and a controversy involving the bankruptcy estate does not bring the matter within the scope of § 1334(b)." *In re Lemco,* 910 F.2d at 789. As we observed in *Lemco,* judicial economy itself does not justify jurisdiction. *Id.* Second, the mere fact that the Boones are both debtors and plaintiffs does not give rise to bankruptcy jurisdiction over their claim. Because the outcome of their tortious interference suit has no conceivable effect on the estate or the administration of it, the Boones are, in a sense, not acting as debtors. The role of debtor is defined by the panoply of rights and duties arising from the petition in bankruptcy; the outcome of the tortious interference claim will not alter those rights and duties in any way. Hence, "[t]o fall within the court's jurisdiction, the plaintiffs' claims must affect the estate, not just the debtor." *In re Wood,* 825 F.2d at 94.

The lack of effect on the estate is thus fatal to bankruptcy jurisdiction over the claim. The Boones allege no alternative basis for federal jurisdiction. Accordingly, we hold that the district court, and therefore the bankruptcy court, lacked jurisdiction over the claim.

## *Conclusion*

Concluding that the district court and bankruptcy court had no jurisdiction over the Boones' claim of tortious interference with the contract to sell their house, we REVERSE and REMAND with instructions to vacate the bankruptcy court's judgment and dismiss the claim for want of jurisdiction.

REVERSED and REMANDED.