**In re Beryl D. CUMMINGS and Linda Cummings, Debtors.**

**Bankruptcy No. 97–07161–TOM–7.**

United States Bankruptcy Court,
N.D. Alabama,
Southern Division.

Feb. 25, 1998.

---

Dewayne Morris, Birmingham, AL, for Debtors.

Jerome Tucker, III, Birmingham, AL, for Movant.

## MEMORANDUM OPINION AND ORDER DENYING MOTION FOR RELIEF FROM STAY

### (Filed by Maureen Green)

BENJAMIN COHEN, Bankruptcy Judge.

Ms. Maureen Green is a co-defendant with the Debtor Linda Cummings in an action pending in the state Circuit Court of Jefferson County, Alabama, styled *Starlin v. Everette, et al.*, Case No. CV-96-3396.[1] On June 26, 1996, Ms. Green filed a cross-claim against Ms. Cummings in that action. On November 18, 1997, Ms. Green filed a *Motion for Relief from Stay* against Ms. Cummings in this Court seeking permission to continue with that state court action. And on December 29, 1997 Ms. Green filed a *Complaint Objecting to Discharge and Requesting an Order for Investigation by the Trustee* against Ms. Cummings, also in this Court, contending that whatever debt owed to her by Ms. Cummings was a non-dischargeable debt.

The only matter subject to this opinion and order is the *Motion for Relief from Stay*. A hearing on that motion was held December 11, 1997. Mr. Jerome Tucker appeared for Ms. Green and Mr. Dewayne Morris appeared for the debtors. No testimony was offered but counsel stipulated to certain facts and made various representations. From those stipulations and representations (and judicial notice of the Court's file in this case pursuant to Federal Rules of Evidence 201) the Court finds that the automatic stay should not be lifted and that the state court case should not be allowed to proceed. And for the reasons expressed below, the Court finds that the debtors' liability to Ms. Green, if any, and the amount of that liability, must be considered and determined in conjunction with the non-dischargeability complaint filed by Ms. Green in this bankruptcy case.

## I. FACTS

On May 31, 1996, Dr. Calvin Starlin filed a lawsuit against Ms. Cummings and Ms. Green in the Circuit Court for Jefferson County, Alabama. That lawsuit alleges breach of a lease agreement. A jury trial was not demanded. On June 26, 1996, Ms. Green filed a cross-claim against Ms. Cummings containing counts for detinue, conversion, and outrage. Ms. Green demanded a trial by jury. On October 22, 1996, Ms. Green amended her cross-claim and added Ronald and Deborah Gilley as defendants.[2] The Gilleys filed a cross-claim against Ms. Cummings for indemnity.[3]

Ms. Cummings and her husband filed a petition for relief under Chapter 7 of the Bankruptcy Code on September 24, 1997. The Chapter 7 trustee filed his *"Final Report of Trustee in No Asset Case"* on November 7, 1997, indicating that there were no assets owned by the debtors from which a distribution to creditors could be made. Ms. Green filed her motion for relief on November 18, 1997.

At the hearing on the motion, counsel for Ms. Green argued that his client should be allowed to proceed in state court in order to liquidate her claim of damages against Ms. Cummings and then return to the bankruptcy court to establish the nondischargeability of that debt. Counsel for Ms. Cummings argued that both matters should be resolved in the bankruptcy court. No evidence or

---

1. The name "Linda Everette" is listed on the petition as another name Linda Cummings has been known by in the past six years. For clarity, this Court will use "Ms. Cummings."

2. Of course, Ms. Green does not need relief from the stay to proceed against either Dr. Starlin or the Gilleys and may proceed against them regardless of whether the stay is lifted as to the debtor; however, this Court has no jurisdiction to hear those actions regardless of the fact that Ms. Green included these non-debtors as defendants in her dischargeability complaint. See the discussion below regarding this Court's jurisdiction over third parties.

3. The Gilleys have not filed a motion for relief from the stay to proceed against Ms. Cummings. But they did file a motion to extend the time for complaints objecting to discharge, in which the Gilleys requested that the deadline for filing complaints under 11 U.S.C. § 727 and Bankruptcy Rule 4004(b) be extended until after resolution of the state court litigation. On January 21, 1998, an order was entered extending the 4004(b) bar date for the Gilleys until 10 days following the entry of that order. See note 19 below.

representations about the status of discovery, the readiness of the state court case for trial, or the nature and complexity of the action were presented. This Court can however, from this Court's file and copies of some of the state court pleadings attached to Ms. Green's motion, extract some pertinent information.

The deadline in this case for filing complaints objecting to discharge under 11 U.S.C. § 727 or objecting to the dischargeability of a debt under 11 U.S.C. § 523, was December 29, 1997. On December 29, 1997, Ms. Green filed an adversary proceeding in this Court, in which she named Mr. and Ms. Cummings, Mr. and Ms. Gilley, and Dr. Starlin as defendants. See note 2. The complaint alleges the following facts: Ms. Green purchased a tanning salon business from Ms. Cummings in November of 1995. The business was located in a building owned by Dr. Starlin. On May 31, 1996, Ms. Cummings, in a conspiracy with Dr. Starlin, locked Ms. Green out of the building and obtained a temporary restraining order from the state court forbidding Ms. Green from entering the building. Shortly thereafter, on June 14, 1996, Ms. Cummings, along with her husband, sold the assets of the business to Mr. and Ms. Gilley. Ms. Green concludes in her complaint that Dr. Starlin and Mr. and Ms. Cummings, by preventing her access to the building where the business and its assets were located, and selling those assets to Mr. and Ms. Gilley, "willfully and maliciously engaged in acts of oppression, fraud, conversion, and trespass against her" and "consciously and deliberately engaged in oppression, fraud, wantonness, willfulness and malice, with regard to Plaintiff Green" and that their conduct in accomplishing those acts "was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, so as to be regarded as atrocious and utterly intolerable." The complaint neither alleges wrongdoing on the part of the Gilleys nor alleges facts that might support any such wrong.

Ms. Green's non-dischargeability complaint more or less tracks the language of her state court cross-claim against Ms. Cummings and alleges that the debt created by the complained of conduct is non-dischargeable under 11 U.S.C. §§ 523(a)(4) and (6). In pertinent part, the premise of Ms. Green's complaint appears to be that the alleged acts of Ms. Cummings and Dr. Starlin, in preventing Ms. Green's access to the building where the business and its assets were located, and the alleged acts of Mr. and Ms. Cummings in selling those assets to Mr. and Ms. Gilley, constitute conversion under state law and thus result in a willful and malicious injury to her property, so that the debt owed to her by the Cummings, if any, is non-dischargeable by virtue of 11 U.S.C. § 523(a)(6).[4]

Based on the same statement of facts contained in Count One of her complaint, Ms. Green also contends that the debtors should be denied their discharges under 11 U.S.C. §§ 727(a)(3), (5), and (7). And finally, Ms. Green's complaint contains a prayer that this Court, pursuant to 11 U.S.C. § 727(c)(2), should order the trustee to examine the acts and conduct of the Cummings to determine whether a ground exists for denial of a discharge.

## II. ISSUE: DOES CAUSE EXIST FOR GRANTING RELIEF FROM THE AUTOMATIC STAY

■ The filing of the debtors' bankruptcy petition under Chapter 7 of the Bankruptcy Code on September 24, 1997 stayed the continued prosecution of Ms. Green's cross-claim against the debtors. Ms. Green has request-

---

4. While the complaint also states that the same acts constitute fraud under 11 U.S.C. § 523(a)(4), this Court questions whether they do, since fraud requires some sort of device, trick or false representation, made or used for the purpose of causing someone to relinquish something of value. No such device, trick or false representation is alleged or described by Ms. Green in her complaint. Similarly, Count 3 of the complaint alleges a cause of action, based on the facts previously described, for "outrage" and intentional infliction of emotional distress. While those causes of action may be properly maintained under state law, they have no counterparts in section 523, and cannot form the basis of a determination of non-dischargeability. Consequently, the language contained in Count 3 may be of no legal consequence, except to the extent that it relates to the issue of non-dischargeability under section 523(a)(6).

ed relief from that stay for the purpose of continuing the prosecution of her cross-claim against Ms. Cummings in state court. Section 362(d) of the Bankruptcy Code provides that the bankruptcy court may grant relief from the automatic stay for "cause." 11 U.S.C. § 362(d). "Cause" for granting relief from the stay may exist if the equities in a particular case dictate that a lawsuit, or some other similar pending action, should proceed in a forum other than the bankruptcy court for the purpose of liquidating the claim on which the lawsuit is premised.[5] The issue in this proceeding then is whether "cause" to lift the stay exists under Section 362(d).

## III. BALANCING THE EQUITIES

### A. Factors

 The practical questions before this Court are, should the state court lawsuit continue in the forum in which it originated or should Ms. Green be required to proceed solely in the bankruptcy court. To answer these questions, this Court must balance the hardship to Ms. Green, if she is not allowed to continue the lawsuit, against the potential prejudice to the debtors, the bankruptcy estate, and to other creditors, if she is. To aid in balancing these equities, this Court has considered certain factors. Those include: (1) trial readiness of the proceeding in the non-bankruptcy forum; (2) judicial economy; (3) the resolution of preliminary bankruptcy issues; (4) costs of defense or other potential burden to the debtor or the bankruptcy estate; (5) the creditor's chances of success on the merits; (6) specialized expertise of the non-bankruptcy forum; (7) whether the damages or claim that may result from the non-bankruptcy proceeding may be subject to equitable subordination under Section 510(c); (8) the extent to which trial of the case in the non-bankruptcy forum will interfere with the progress of the bankruptcy case; (9) the anticipated impact on the movant, or other non-debtors, if the stay is not lifted; and, (10) the presence of third parties over which the bankruptcy court lacks jurisdiction.[6]

5. *Wood v. Fiedler (In re Wood)*, 548 F.2d 216 (8th Cir.1977); *Goya Foods, Inc. v. Unanue–Casal (In re Unanue–Casal)*, 159 B.R. 90 (D.P.R.1993), aff'd, 23 F.3d 395 (1st Cir.1994); *Universal Life Church, Inc. v. United States (In re Universal Life Church, Inc.)*, 127 B.R. 453 (E.D.Cal.1991), aff'd, 965 F.2d 777 (9th Cir.1992); *Murray v. On–Line Business Systems, Inc. (In re Revco D.S., Inc.)*, 99 B.R. 768 (N.D.Ohio 1989); *Broadhurst v. Steamtronics Corp.*, 48 B.R. 801 (D.Conn.1985); *Harris v. Fidelity and Deposit Co. of Maryland (In re Harris)*, 7 B.R. 284 (S.D.Fla.1980); *Edmondson v. America West Airlines, Inc. (In re America West Airlines)*, 148 B.R. 920 (Bankr.D.Ariz.1993); *In re Anton*, 145 B.R. 767 (Bankr.E.D.N.Y.1992); *Murray Indus., Inc. v. Aristech Chemical Corp. (In re Murray Indus., Inc.)*, 121 B.R. 635 (Bankr. M.D.Fla.1990); *In re Saunders*, 103 B.R. 298 (Bankr.N.D.Fla.1989); *In re Parkinson*, 102 B.R. 141 (Bankr.C.D.Ill.1988); *In re Todd Shipyards Corp.*, 92 B.R. 600 (Bankr.D.N.J.1988); *Covert v. McGuirt (In re McGuirt)*, 61 B.R. 974 (Bankr. S.D.Tex.1986); *In re Newport Offshore, Ltd.*, 60 B.R. 348 (Bankr.D.R.I.1986); *In re Yaffe*, 58 B.R. 26 (Bankr.D.C.1986); *Wilson v. Unioil (In re Unioil)*, 54 B.R. 192 (Bankr.D.Col.1985); *In re Westwood Broadcasting, Inc.*, 35 B.R. 47 (Bankr.D.Hawai'i.1983); *Metro Mill & Casework v. Fiedler (In re Fiedler)*, 34 B.R. 602 (Bankr. D.Col.1983); *Hoenig v. Hoffman (In re Hoffman)*, 33 B.R. 937 (Bankr.W.D.Okl.1983). Congress intended that the stay be lifted to allow proceedings to continue in forums other than the bankruptcy court under appropriate circumstances. "[I]t will often be more appropriate to permit proceedings to continue in their place of origin, when no great prejudice to the bankruptcy estate would result, in order to leave the parties to their chosen forum and to relieve the bankruptcy court from any duties that may be handled elsewhere." H.R.Rep. No. 595, 95th Cong., 1st Sess. 341 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 50 (1978), reprinted in 1978 U.S.C.C.A.N. 5787, 5836, 5963, 6297. Congress's concept of "cause" is further explained as follows:

A desire to permit an action to proceed to completion in another tribunal may provide another cause. Other causes might include the lack of any connection with or interference with the pending bankruptcy case. For example, a divorce or child custody proceeding involving the debtor may bear no relation to the bankruptcy case. In that case, it should not be stayed. A probate proceeding in which the debtor is the executor or administrator of another's estate usually will not be related to the bankruptcy case, and should not be stayed. Generally proceedings in which the debtor is a fiduciary, or involving postpetition activities of the debtor, need not be stayed because they bear no relationship to the purpose of the automatic stay, which is debtor protection from his creditors. The facts of each request will determine whether relief is appropriate under the circumstances.

H.R.Rep. No. 595, at 340–344, 1978 U.S.Code Cong. & Ad.News at pp. 5963,6296–6300.

6. See this Court's opinion in *In re Tricare Rehabilitation Sys., Inc.*, 181 B.R. 569, 575 (Bankr.

The party requesting relief from the automatic stay must first, of course, present at least a prima facie showing of "cause." [7] The burden is then on the party opposing the motion for relief to show that if a movant is allowed to proceed against a debtor in state court, that there would be prejudice to the debtor, to the bankruptcy estate, or to other creditors.[8]

In reviewing the above ten factors, if the liquidation of a debt that a creditor contends is non-dischargeable is at issue, special attention, and additional emphasis, should be accorded factors numbered (4) and (8).[9] "The whole point of bankruptcy is to provide a debtor with a fresh start." *Folendore v. United States Small Business Administra-*

tion (in re Folendore), 862 F.2d 1537, 1540 (11th Cir.1989). In order to protect the debtor's opportunity to obtain his or her "fresh start," Congress has placed the exclusive jurisdiction to determine the dischargeability of the debts described in subsections (a)(2), (a)(4), (a)(6) and (a)(15) of 11 U.S.C. § 523 in the bankruptcy court. 11 U.S.C. § 523(c)(1). One reason for this exclusive jurisdiction was to prevent creditors from taking advantage of impecunious debtors who are unable to retain counsel to defend themselves in state court lawsuits, actions that would negate the "fresh start" that a discharge is designed to provide. This Court's exercise of its exclusive jurisdiction would review such occurrences.

N.D.Ala.1994). See also *Goya Foods, Inc. v. Unanue–Casal (In re Unanue–Casal)*, 159 B.R. at 100; *Edmondson v. America West Airlines, Inc. (In re America West Airlines)*, 148 B.R. at 923; *In re Anton*, 145 B.R. at 770; *Murray Indus., Inc. v. Aristech Chemical Corp. (In re Murray Indus., Inc.)*, 121 B.R. at 637; *In re Parkinson*, 102 B.R. at 142; *In re Todd Shipyards Corp.*, 92 B.R. at 602; *Wilson v. Unioil (In re Unioil)*, 54 B.R. at 195; *In re Westwood Broadcasting, Inc.*, 35 B.R. at 48; *Hoenig v. Hoffman (In re Hoffman)*, 33 B.R. at 941.

Numerous considerations have influenced the balancing operation described in the many published bankruptcy opinions on this subject. Those considerations have been stated and restated in many forms and fashions, but are readily listed, and consistently and routinely followed. This Court previously attempted to catalogue and discuss those considerations in *In re Tricare Rehabilitation Sys., Inc.*, 181 B.R. 569, 573–574 (Bankr.N.D.Ala.1994). The factors listed have been gleaned from the often cited cases of *In re Johnson*, 115 B.R. 634, 636 (Bankr.D.Minn. 1989), and *In re Curtis*, 40 B.R. 795 (Bankr. D.Utah 1984). In *Tricare*, the Court combined and reconciled the list of factors contained in *Johnson* with the factors listed in *Curtis*, and discussed those factors within the context of the facts presented in that particular case. To that discussion, the Court would make an additional observation. The factor listed in *Curtis* as number 12 relating to the anticipated impact on the movant, or other nondebtors, of the bankruptcy court's decision to lift the stay, or not, although it has no corresponding *Johnson* factor per se, is implicit in any "weighing of the equities" exercise and therefore an important consideration in every case. *In re Curtis*, 40 B.R. at 799–800.

7. *In re Tricare Rehabilitation Sys., Inc.*, 181 B.R. at 575. *See also Goya Foods, Inc. v. Unanue–Casal (In re Unanue–Casal)*, 159 B.R. at 94; *In re Anton*, 145 B.R. at 769; *In re Todd Shipyards*

Corp., 92 B.R. at 602 n. 2; *Wilson v. Unioil (In re Unioil)*, 54 B.R. at 193.

8. *In re Tricare Rehabilitation Sys., Inc.*, 181 B.R. at 575. *See also Goya Foods, Inc. v. Unanue–Casal (In re Unanue–Casal)*, 159 B.R. at 95; *In re Anton*, 145 B.R. at 769; *In re Todd Shipyards Corp.*, 92 B.R. at 602; *Wilson v. Unioil (In re Unioil)*, 54 B.R. at 194; *Hoenig v. Hoffman (In re Hoffman)*, 33 B.R. at 941.

9. Numerous courts have determined that, under appropriate circumstances, a bankruptcy court may grant relief from the stay to allow a debt to be liquidated in a pending state court proceeding, and then make a determination of dischargeability based on the state court record. *Transamerica Insurance Co. v. Olmstead (In re Olmstead)*, 608 F.2d 1365, 1367 (10th Cir.1979); *Austin v. Wendell–West Co.*, 539 F.2d 71, 72 (9th Cir.1976); *Harris v. Fidelity and Deposit Co. of Maryland (In re Harris)*, 7 B.R. 284, 286 (S.D.Fla.1980); *Robinson v. Mountjoy (In re Mountjoy)*, 368 F.Supp. 1087, 1096 (W.D.Mo. 1973); *Ozai v. Tabuena (In re Ozai)*, 34 B.R. 764, 766 (9th Cir. BAP 1983); *Roberts v. Spencer (In re Spencer)*, 168 B.R. 142, 145 (Bankr.N.D.Tex. 1994); *National Credit Union Administration v. Harris (In re Harris)*, 135 B.R. 434, 436 (Bankr. S.D.Fla.1992); *In re Saunders*, 103 B.R. 298, 299 (Bankr.N.D.Fla.1989); *Braun v. Zarling (In re Zarling)*, 85 B.R. 802, 804 (Bankr.E.D.Wis.1988); *Mutual Fire, Marine & Inland Insurance Co. Of Philadelphia, Pennsylvania v. Frantz (In re Frantz)*, 82 B.R. 835, 837 (Bankr.S.D.Tex.1988); *Kowalewycz v. Sears (In re Sears)*, 68 B.R. 34, 36 (Bankr.W.D.Mo.1986); *Barrios v. Ruiloba (In re Ruiloba)*, 58 B.R. 700 (Bankr.S.D.Fla.1986); *Sapp v. Naughton (In re Naughton)*, 44 B.R. 670, 673 (Bankr.W.D.Mo.1984); *Hoenig v. Hoffman (In re Hoffman)*, 33 B.R. 937, 941 (Bankr. W.D.Okla.1983); *Thomson McKinnon Securities, Inc. v. Hunter (In re Hunter)*, 32 B.R. 140, 141 (Bankr.S.D.Fla.1983); *Carter v. Larkham (In re Larkham)*, 31 B.R. 273, 277 (Bankr.D.Vt.1983).

In such a review, this Court must consider that if relief from the stay is granted, a debtor may be forced to expend substantial post-bankruptcy earnings in counsel fees and associated expenses in order to defend a state court action, or may be unable to afford to defend in state court with the result that an adverse judgment is entered against him or her, or may be forced to make a disadvantageous settlement because of a financial inability to mount a satisfactory defense in state court. If these results occur, the reservation of exclusive jurisdiction, and one of the primary reasons for it, would be undermined.[10]

■ The financial burden of defending a state court proceeding (and the deleterious consequences, win or lose, which shouldering that burden will presumably have on a debtor's opportunity to gain the fresh start contemplated by the Bankruptcy Code) may preclude relief from the stay in situations were the dischargeability of the debt underlying the state court proceeding has been put into issue in the bankruptcy court (absent extenuating circumstances militating in favor of passing the litigation to the state court). Certainly, a debtor must, if relief from the stay is denied, still defend against a non-dischargeability complaint in bankruptcy, and that debtor will of course incur some

expense in making that defense. However, the expense of defending in this Court will ordinarily be less than the expenditures that would be required of a debtor to mount a satisfactory defense in a state court trial. Bankruptcy procedure for determining the dischargeability of debts is, more than a trial in state court, by design, a more expedient, efficient and less costly mechanism for both determining dischargeability of a debt and for liquidating a debt underlying a claim of non-dischargeability. This is especially true since no right to a trial by jury exists in bankruptcy dischargeability proceedings.

## B. Consideration of Factors

### 1. Trial Readiness

■ No evidence or representation regarding the readiness of the state court case for trial was made either in the pleadings or at the hearing and this Court is unable to extract any such information. Consideration of this factor, therefore, *mitigates against relief from the stay* since there is no evidence that the state court is in a posture to try this case more expeditiously or expediently than this Court.

> When a person assigns future wages, he, in effect, pledges his future earning power. The power of the individual to earn a living for himself and those dependent upon him is in the nature of a personal liberty quite as much if not more than it is a property right. To preserve its free exercise is of the utmost importance, not only because it is a fundamental private necessity, but because it is a matter of great public concern. From the viewpoint of the wage-earner there is little difference between not earning at all and earning wholly for a creditor. Pauperism may be the necessary result of either. The amount of the indebtedness, or the proportion of wages assigned, may here be small, but the principle, once established, will equally apply where both are very great. The new opportunity in life and the clear field for future effort, which it is the purpose of the Bankruptcy Act to afford the emancipated debtor, would be of little value to the wage-earner if he were obliged to face the necessity of devoting the whole or a considerable portion of his earnings for an indefinite time in the future to the payment of indebtedness incurred prior to his bankruptcy.
> *Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 78 L.Ed. 1230 (1934).

**10.** Post-petition earnings are essential to the debtor's fresh start. As Justice George Sutherland, in *Local Loan Co. v. Hunt* explained:

> One of the primary purposes of the Bankruptcy Act is to "relieve the honest debtor from the weight of oppressive indebtedness, and permit him to start afresh free from the obligations and responsibilities consequent upon business misfortunes." Williams v. U.S. Fidelity & Guaranty Co., 236 U.S. 549, 554, 555, 35 S.Ct. 289, 290, 59 L.Ed. 713. This purpose of the act has been again and again emphasized by the courts as being of public as well as private interest, in that it gives to the honest but unfortunate debtor who surrenders for distribution the property which he owns at the time of bankruptcy, a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of pre-existing debt. The various provisions of the Bankruptcy Act were adopted in the light of that view and are to be construed when reasonably possible in harmony with it so as to effectuate the general purpose and policy of the act. Local rules subversive of that result cannot be accepted as controlling the action of a federal court.

## 2. Judicial Economy

Principles of judicial economy require that, without good reason, judicial resources should not be spent by duplicitous litigation and that a lawsuit should be tried only once, if one forum with jurisdiction over all parties is available to dispose of all issues relating to the lawsuit.[11] Often, a state court is in the best posture to provide a complete consideration of the issues of liability and damages, among all the parties to a case, and to do so while guaranteeing to each the constitutional rights of due process and a trial by jury.

As is discussed later, parties exist in the state court case over which the bankruptcy court does not have jurisdiction. Consequently, if the stay is not lifted, two trials, one in state court by Ms. Green against Dr. Starlin and the Gilleys and one in this Court by Ms. Green against the debtors, will be required to settle all of the issues between the parties presently involved in the state court litigation. However, the trial in this Court between Ms. Green and the debtors (but not the non-debtors) should be relatively brief and simple, thereby minimizing any such duplication.

On the other hand, if the stay is lifted to permit the state court lawsuit to proceed, all litigation in this Court would not be eliminated. Disposition of the state court lawsuit will not dispose of Ms. Green's claims against Mr. Cummings, who is a defendant in the dischargeability action, but is not a defendant of Ms. Green's action in the state court.[12] Disposition of the state court lawsuit will not necessarily dispose of Ms. Green's section 727 claims. And finally, even after the state court trial is over, this Court will still have to determine (based on the state court record) the dischargeability of any debt determined to be owed to Ms. Green by Ms. Cummings.

Concerns for judicial economy, in this matter, *do not weigh in favor* of granting the relief from stay requested by Ms. Green.

## 3. Resolution of Preliminary Bankruptcy Issues

Since the resolution of the litigation between Ms. Green and the debtors will have no impact on the administration of the bankruptcy estate or any other party to this bankruptcy proceeding, other than those directly involved in the state court litigation, *no preliminary bankruptcy issues must be resolved* before the stay may be lifted.

## 4. Costs of Defense or Other Potential Burden to the Debtor or to the Estate

The costs to the debtors of defending the state court action will be substantially more if the stay is lifted, than if the stay is not lifted and Ms. Green is required to litigate solely in the bankruptcy court. This is especially true since the state action will involve a jury trial.

The statements of income and expenditures filed by the debtors with their bankruptcy petition indicate that they currently take home combined monthly earnings of $2,366.67 and pay $2,353.00 in monthly living expenses. The debtors, in their schedule of property, represent that they own no unencumbered property of a value over and above the exemptions allowed to them by the law of the State of Alabama, a representation that is bolstered by the Chapter 7 trustee's "no-asset" final report filed in this case on November 7, 1997. Relief from the stay has been granted to permit the debtors' mortgagee to foreclose on the debtors' home and the debtors expressed, on their statement of intentions filed pursuant to 11 U.S.C. § 521(2), their intention to surrender one of their automobiles to the creditor holding the

**11.** *In re Tricare Rehabilitation Sys., Inc.,* 181 B.R. at 575. *See also Goya Foods, Inc. v. Unanue–Casal (In re Unanue–Casal),* 159 B.R. at 97–98; *Universal Life Church, Inc. v. United States (In re Universal Life Church, Inc.),* 127 B.R. at 455; *Harris v. Fidelity and Deposit Co. of Maryland (In re Harris),* 7 B.R. at 286; *In re Anton,* 145 B.R. at 770; *Edmondson v. America West Airlines, Inc. (In re America West Airlines),* 148 B.R. at 925; *Murray Indus., Inc. v. Aristech Chemical Corp. (In re Murray Indus., Inc.),* 121 B.R. at 637; *In re Saunders,* 103 B.R. at 299;

*Mattingly v. Newport Offshore, Ltd. (In re Newport Offshore, Ltd.),* 59 B.R. at 285; *In re Yaffe,* 58 B.R. at 28; *Wilson v. Unioil (In re Unioil),* 54 B.R. at 195; *In re Westwood Broadcasting, Inc.,* 35 B.R. at 49.

**12.** Although he is a defendant of the Gilleys in the state court action, the Gilleys did not timely file a non-dischargeability action against either Mr. or Ms. Cummings. See note 19 below.

security interest on that automobile. Aside from any debt owed by them to Ms. Green or the Gilleys, the debtors, according to their schedules, owe $4,347.00 in priority debts that will be unaffected by any discharge that may be granted in this case, and owe $31,-106.00 in non-priority, unsecured debts.

Considering the debtors' acute financial difficulties, this Court must conclude that the debtors will be unable to afford to mount a serious defense in state court. Any expenditures that they would be forced to make toward presenting that defense, and any post-petition debt that they would be forced to incur to carry that defense, would erode the fresh start that they would receive as a result of any discharge that may be entered in this case, even if they were ultimately victorious in state court. Similarly, if Ms. Green is victorious in obtaining a judgment in state court against one or both of the debtors, the debtors will be required to spend even more money participating in the subsequent determination of dischargeability of that judgment in this Court.

In the cross-claim filed by Ms. Green against Ms. Cummings, Ms. Green demanded compensatory and punitive damages in the amount of $1,000,000.00. The very real possibility exists, therefore, that an inability to mount a credible defense to Ms. Green's cross-claim may result in permanent financial injury, or cause Ms. Cummings to be forced into an onerous settlement of Ms. Green's claims, regardless of the merit of those claims or the merit of any defenses she may have to those claims.

The real possibility exists that because Ms. Cummings may be unable to mount a credible defense, a default judgment may be entered against her by the state court. While this act may not have a lasting negative impact (collateral estoppel ordinarily may not be accorded a default judgment, especially in a nondischargeability setting, see this Court's opinion in *Angus v. Wald (In re Wald)*, 208 B.R. 516 (Bankr.N.D.Ala.1997)), if a default judgment *is* entered against Ms. Cummings by the state court and this Court determines

that collateral estoppel may not be accorded that judgment, then nothing will have been accomplished by sending the cross-claim to the state court for litigation.

This factor *weighs heavily against* granting the relief from the stay requested by Ms. Green.

### 5. The Creditor's Chances of Success on the Merits

No evidence was presented or representations were made by the movant regarding the chances of success on the merits in the state court action. Without knowing the evidence the state court will hear, it is not possible for this Court to predict to what extent, if any, Ms. Green might be successful against Ms. Cummings.[13] Since Mr. Cummings is not a defendant of Ms. Green's in the state court, Ms. Green would have no chance of successfully obtaining a judgment against him in that action.

Similarly, this Court specifically notes that no facts are described in Ms. Green's state court complaint which support her contention that there was a conspiracy between Dr. Starlin and Ms. Cummings and there were no representations, at the hearing on this matter, of any such purported facts. Consequently, Ms. Green has not satisfied the requirement that a movant seeking relief from the stay must propose at least some purported or alleged facts which may provide a plausible basis for the claim which the movant seeks to liquidate in state court.

In contrast, from the state court pleadings a reasonable conclusion can be drawn that Ms. Green owed a substantial amount of rent to Dr. Starlin. That is important because in Alabama a landlord has a statutory lien for unpaid rent on a lessee's personalty that is located on the leased premises. Code of Ala.1975, § 35-9-60. That lien attaches to any property brought on to the leasehold and secures payment of the rent due for the entire term of the lease. *Dixon v. Bashford*, 220 Ala. 625, 626, 127 So. 194 (1930). Simply alleging that Dr. Starlin changed the locks on the building and obtained a temporary re-

---

**13.** *In re Tricare Rehabilitation Sys., Inc.*, 181 B.R. at 577; *Peterson v. Cundy (In re Peterson)*, 116 B.R. 247, 249–50 (D.Col.1990).

straining order against Ms. Green may not, therefore, describe any wrongdoing on the part of Dr. Starlin, but, without more, may merely describe lawful actions taken by a landlord to preserve statutory lien rights.

To recover for damages due to the tort of "conspiracy" to commit a conversion, a plaintiff must prove: (a) that two or more persons engaged in concerted action to commit a conversion against the plaintiff; (b) that a conversion against the plaintiff was actually committed; and (c) that one of the parties to the conspiracy committed the conversion. *Ryan v. First Alabama Bank*, 620 So.2d 568, 573 (Ala.1993); *Huckleberry v. M.C. Dixon Lumber Co., Inc.*, 503 So.2d 1209, 1210–1211 (Ala.1987); *Darden v. Mann*, 163 Ala. 297, 50 So. 1033, 1034 (1909). The allegations of Ms. Green's state court complaint, relating to the actions of Dr. Starlin, do not describe a conversion against the plaintiff. Furthermore, the movant has not advised this Court of any purported facts, either in her complaint or at the hearing of this motion, which, if proved, would suggest a conspiracy between Dr. Starlin and Ms. Cummings, or how either of them could have benefitted from such a conspiracy. Since Dr. Starlin ostensibly had the authority to change the locks and to institute and to control the litigation against Ms. Green (without any permission from or the assistance of Ms. Cummings) it is not apparent as to how Dr. Starlin's actions in changing the locks on the building (which he owned) and obtaining a restraining order preventing Ms. Green from accessing the building, resulted from any "concerted action" between Ms. Cummings and Dr. Starlin. Certainly, the fact that Dr. Starlin sued Ms. Cummings, along with Ms. Green, for the rent owed on the building, substantially detracts from the assertion that Dr. Starlin and Ms. Cummings acted against Ms. Green.

This factor does not support the relief from the stay requested by Ms. Green. And, in regard to the claim by Ms. Green against Ms. Cummings based on conspiracy, this factor *weighs against* the granting of the relief from the automatic stay requested by Ms. Green.

## 6. Specialized Expertise of the Non–Bankruptcy Forum

All of the issues regarding liability and damages in this matter strictly involve Alabama state law. The state court judge is familiar with the law that forms the framework for the resolution of those issues.[14] But this Court is likewise familiar with the state law of trover and conversion. The legal issues in this case (as framed by the state court pleadings) do not appear to be overly complicated. As the Supreme Court of the United States has cautioned, not every state law conversion results in a debt that is non-dischargeable under 11 U.S.C. § 523(a)(6). Writing for the Court, Justice Benjamin N. Cordozo explained:

> [A] wilful and malicious injury does not follow as of course from every act of conversion, without reference to the circumstances. There may be a conversion which is innocent or technical, an unauthorized assumption of dominion without wilfulness or malice. There may be an honest, but mistaken belief, engendered by a course of dealing, that powers have been enlarged or incapacities removed. In these and like cases, what is done is a tort, but not a wilful and malicious one.
>
> . . . .
>
> The discharge will prevail as against a showing of conversion without aggravated features.

*Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 332–333, 55 S.Ct. 151, 79 L.Ed. 393 (1934).[15]

---

**14.** *In re Tricare Rehabilitation Sys., Inc.*, 181 B.R. at 574 n. 10. *See also Goya Foods, Inc. v. Unanue–Casal (In re Unanue–Casal)*, 159 B.R. at 98; *Murray v. On–Line Business Systems, Inc. (In re Revco D.S., Inc.)*, 99 B.R. at 777; *Broadhurst v. Steamtronics Corp.*, 48 B.R. at 802–03; *Edmondson v. America West Airlines, Inc. (In re America West Airlines)*, 148 B.R. at 925; *In re Parkinson*, 102 B.R. at 142; *Mattingly v. Newport Offshore, Ltd. (In re Newport Offshore, Ltd.)*, 59 B.R. 283, 286 (Bankr.D.R.I.1986); *cf. Universal*

*Life Church, Inc. v. United States (In re Universal Life Church, Inc.)*, 127 B.R. at 455 (relief from stay granted to allow liquidation of tax claim in state tax court).

**15.** The Court of Appeals for the Eleventh Circuit determined, in *Wolfson v. Equine Capital Corp. (In re Wolfson)*, 56 F.3d 52, 54–55 (11th Cir. 1995), that waiver, in the form of acquiescence or non-action after knowledge of a conversion, will preclude a finding of non-dischargeability

Collateral estoppel would preclude the re-trial of factual issues actually tried and determined in the state court. See this Court's opinion in *Angus v. Wald (In re Wald)*, 208 B.R. 516 (Bankr.N.D.Ala.1997). The state court record must, however, be clear as to what issues were actually tried and determined. The issues of willfulness and malice are governed by federal law and this Court is reluctant to relinquish the determination of those issues since there is a chance that the state court record will be unclear or that the jury will return a general verdict for compensatory damages and not punitive damages. If that occurs, then additional testimony and evidence may be required to clarify the state court record. If testimony and evidence is required to clarify the state court record then any judicial economy that may be realized by sending the case to state court may be eviscerated.

This factor *does not necessarily weigh in favor* of granting the relief from the stay requested by Ms. Green.

**7. Whether the Damages or Claim that may Result from the Non–Bankruptcy Proceeding may be Subject to Equitable Subordination under 11 U.S.C. § 510(c)**

Since this is a "no-asset" Chapter 7 case, this factor *is not relevant* to the determination of this motion.

**8. The Extent to Which Trial of the Case in the Non–Bankruptcy Forum Will Interfere With the Progress of the Bankruptcy Case**

The bankruptcy case cannot be closed until Ms. Green's adversary proceeding is resolved.[16] If relief from the stay is granted, the section 523 portion of the adversary proceeding will not be resolved until after the trial of the state court lawsuit. Since the

case in this Court is a "no asset" case, delay that will result from awaiting the outcome of the state court suit will have no impact on the administration of the bankruptcy estate. Awaiting the outcome of the state court suit will, however, substantially delay the closing of the bankruptcy case and the entry of the debtors' discharges.

The debtors have sought the expedient closure of any disputes involving prepetition debts and creditors through this bankruptcy case. By retaining the litigation of the non-dischargeability complaints that have been brought against the debtors, this Court can insure the relatively prompt resolution of those complaints. "This view further comports with the bankruptcy policy of granting a debtor a discharge, and hence a 'fresh start,' as expediently, efficiently, and fairly as possible in appropriate circumstances." *Coggin v. Coggin (In re Coggin)*, 30 F.3d 1443, n. 8 (11th Cir.1994).

This factor *weighs against* the granting of the relief from the stay requested by Ms. Green.

**9. The Anticipated Impact on the Movant and other Parties if the Stay is Not Lifted**

If Ms. Green is denied relief from the stay, she will be forced to try two cases, one against the debtor in the bankruptcy court and another in the state court against Dr. Starlin and the Gilleys.[17] This Court must assume that Ms. Green will be subjected to greater personal and financial hardship if required to participate in two trials in different courts rather than one trial in the same court, although no evidence has been presented or arguments made as to how exactly, or to what extent, that result will adversely effect her.

---

even if the conversion was willful and malicious. *See, e.g., Braswell Wood Co. v. Fussell*, 474 So.2d 67, 73–75 (Ala.1985) (discussing defenses of waiver and estoppel to conversion action).

**16.** Should the Gilleys amend the pleading filed by them in this proceeding to object to the debtors' discharges under 11 U.S.C. § 727, the closing of the case would also be delayed until the resolution of that adversary proceeding. See note 19 below.

**17.** *See In re Tricare Rehabilitation Sys., Inc.*, 181 B.R. at 578; *In re Anton*, 145 B.R. at 770; *Murray Indus., Inc. v. Aristech Chemical Corp. (In re Murray Indus., Inc.)*, 121 B.R. at 637; *In re Parkinson*, 102 B.R. at 142; *Wilson v. Unioil (In re Unioil)*, 54 B.R. at 195; *In re Westwood Broadcasting, Inc.*, 35 B.R. at 49; *Hoenig v. Hoffman (In re Hoffman)*, 33 B.R. at 941.

On the other hand, there will be no impact on either Dr. Starlin or the Gilleys if the stay is not lifted. Those parties will be required to participate in only one lawsuit, in state court, against Ms. Green (notwithstanding that Ms. Green included them as defendants in the adversary proceeding pending in this case). Because neither timely filed a complaint to determine the dischargeability of any debt owed to them by the debtors, any such debt will be destroyed by the discharge order that will be entered in this case. There is consequently no reason for those debts to be liquidated at this time. If, of course, either Ms. Green or the Gilleys are successful pursuant to 11 U.S.C. § 727 in objecting to the granting of a discharge to the debtors, Dr. Starlin and the Gilleys may resume or reinstitute their suits against the debtors in state court.

This factor, as it relates to the impact that denial of the motion for relief will have on Ms. Green, *weighs in favor* of granting the relief from stay requested by Ms. Green.

### 10. The Presence of Third Parties Over Which the Bankruptcy Court Lacks Jurisdiction

Pursuant to 28 U.S.C. § 1334(a), federal district courts have exclusive and original jurisdiction over cases filed under the provisions of title 11 of the United States Code. District courts also have, pursuant to 28 U.S.C. § 1334(b), original, but not exclusive, jurisdiction over civil proceedings arising under title 11, civil proceedings arising in cases filed under title 11, and civil proceedings related to cases filed under title 11. A district court may refer any matter over which it has jurisdiction by virtue of section 1334 to the bankruptcy judges of the district. 28 U.S.C. § 157(a).

"[F]or federal bankruptcy jurisdiction to exist, a case must at minimum 'relate to' a case under title 11." *Community Bank of Homestead v. Boone (In re Boone)*, 52 F.3d 958, 960 (11th Cir.1995). Pursuant to 28 U.S.C. § 157(c), a bankruptcy judge may hear a non-core proceeding that is "related to" a title 11 case. Such a proceeding is

"related to" a case filed under title 11 if it "could conceivably have an effect on the estate being administered in bankruptcy...." *Id.* (quoting *Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.)*, 910 F.2d 784, 788 (11th Cir.1990)). The case filed by the debtors here under Chapter 7 is what is commonly referred to as a "no-asset" case. The debtors have nothing, over and above assets exempt to them, that can be brought into the bankruptcy estate and shared among creditors.

Since there is no bankruptcy estate to be administered, and none can or will be created as a result of Ms. Green's claims against Dr. Starlin and Mr. and Ms. Gilley, those claims can have no affect on the administration of the bankruptcy estate. Ms. Green's claims against Dr. Starlin and Mr. and Ms. Gilley will neither enlarge nor diminish the bankruptcy estate. They will be of no benefit to anyone other than Ms. Green. Nor will Ms. Green's claims against Dr. Starlin and Mr. and Ms. Gilley reduce the debtor's total liabilities to the benefit of all creditors. Consequently, it appears that neither 28 U.S.C. § 1334(b) nor 28 U.S.C. § 157(c)(1) endows this Court with subject matter jurisdiction over those claims. "The lack of effect on the estate is thus fatal to bankruptcy jurisdiction over the claim." *Community Bank of Homestead v. Boone (In re Boone)*, 52 F.3d at 961. And the simple fact that the claims have some factual nexus with the determination of the dischargeability of the debt, if any, owed by the debtors to Ms. Green does not give rise to bankruptcy jurisdiction. *Id.* "Overlap between the bankrupt's affairs and another dispute is insufficient unless its resolution also affects the bankrupt's estate or the allocation of assets among creditors. The mere fact that there may be common issues of fact between a civil proceeding and a controversy involving the bankruptcy estate does not bring the matter within the scope of § 1334(b)." *Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.)*, 910 F.2d at 789.[18]

---

18. The claims asserted by Ms. Green against Dr. Starlin and the Gilleys will be addressed in the adversary proceeding.

On the other hand, the state court in this matter has subject matter jurisdiction over all of the claims asserted in the lawsuit involving the debtors. This Court has subject matter jurisdiction only of the claim by Ms. Green against the debtors, but the state court in which the action is presently pending can fully litigate and determine, in one trial, all of the issues regarding liability and damages among all of those litigants. However, an analysis of the claims involved in the state court lawsuit indicates that the participation of the debtors in that case, albeit convenient, is not required for the resolution of those claims:

1. *Dr. Starlin v. Ms. Green and Ms. Cummings:* Dr. Starlin has not filed a complaint objecting to the discharge of his claim and the time period for doing so has passed. Consequently, there is no reason to liquidate the debt, if any, owed by Ms. Cummings to Dr. Starlin. Ms. Green has asserted no claim for indemnity or other claim against Ms. Cummings in the state court based on the rent owed on Dr. Starlin's building. The participation of Ms. Cummings in the state court lawsuit is not, therefore, required for the resolution of Dr. Starlin's claims against either her or Ms. Green. For the same reason, and because Mr. Cummings is not a defendant of Dr. Starlin's action in the state court, his participation in that action for purposes or resolving this claim is unnecessary.

2. *Ms. Green's claim for conversion against Dr. Starlin:* Ms. Green claims that Dr. Starlin changed the locks on the building owned by him (which contained the personal property owned by her), for the purpose of keeping her from gaining access to that property. Also, Ms. Green claims that Dr. Starlin obtained a temporary restraining order from the state court forbidding her from attempting to gain possession of the property. No reason is evident which requires Ms. Cummings to participate in the state court as a party defendant for the purpose of determining whether Dr. Starlin wrongfully changed the locks on his building or wrongfully obtained a temporary restraining order against Ms. Green. Because Mr. Cummings is not a defendant of Ms. Green's action in the state court, his participation in that ac-

tion for purposes of resolving this claim is unnecessary.

3. *Ms. Green's claim for conversion against Ms. Cummings for selling the property to the Gilleys:* Ms. Green claims that Ms. Cummings committed conversion by selling property owned by Ms. Green to the Gilleys. That claim is the essence of Ms. Green's non-dischargeability action in this Court. No reason is evident that requires the participation of Dr. Starlin or the Gilleys as party defendants for the purpose of determining whether Ms. Cummings wrongfully sold Ms. Green's property. Because Mr. Cummings is not a defendant of Ms. Green's action in the state court, his participation in that action for purposes of resolving this claim is unnecessary.

4. *Ms. Green's claim for conversion against Ms. Cummings for conspiring with Dr. Starlin:* Ms. Green claims that Ms. Cummings conspired with Dr. Starlin to have the locks on the building changed and to obtain a temporary restraining order in state court for the purpose of preventing her from gaining possession of the assets of the tanning salon that were located on the building being leased by her from Dr. Starlin. Generally speaking, it would seem that the trial of two alleged co-conspirators in separate actions might be a duplication of effort on the part of the plaintiff, a waste of judicial resources as a result of duplicate trials, and present the risk of conflicting verdicts. However, as indicated in the discussion regarding the relief from stay factor number 5 above, that is, "The Creditor's Chances of Success on the Merits," the tenuous nature of this particular claim precludes a determination by this Court that Ms. Cummings participation in the state court action would be helpful to its resolution. Relief from the stay, when it is likely to delay and hamper a debtor's opportunity to receive a discharge, and dilute the "fresh start" that the debtor ultimately may receive from a discharge, may not be granted to pursue such a tenuous and unsupported claim. Also, because Mr. Cummings is not a defendant of Ms. Green's action in the state court, his participation in that action for purposes of resolving this claim is unnecessary.

5. *Ms. Green's claim against the Gilleys for return of the property sold to them by Ms. Cummings:* Ms. Green claims that Ms. Cummings did not own the property that Ms. Cummings sold to the Gilleys, and that as a result, the Gilleys acquired no title to or interest in the property as a result of the sale. Consequently, Ms. Green seeks in the state court action the return of the property from the Gilleys. She contends that the property belongs to her by virtue of her earlier purchase of the same from Ms. Cummings. There is no question that the presence of Ms. Cummings and the Gilleys in the same action would be helpful to the resolution of this claim. However, whether the Gilleys have an interest in the property may depend solely on whether Ms. Cummings had an interest in the property. If, aside from that question, the Gilleys have independent defenses against Ms. Green, those defenses can be asserted in a separate action and the presence of Ms. Cummings would be unhelpful to the resolution of issues raised by those separate defenses. Otherwise, the question of whether Ms. Cummings had an interest in the property that could be conveyed, may hinge on the same facts and circumstances involved in determining whether or not Ms. Cummings is liable to Ms. Green for conversion of the property. As to the latter question, the Gilleys would appear to have no say, being in essence, merely stakeholders, whose fate may depend on the outcome of the litigation between Ms. Green and the Cummings. And collateral estoppel, by virtue of the litigation of those facts in this Court, should preclude the relitigation of those same facts in the state court case between Ms. Green and the Gilleys, thereby minimizing any duplication of effort. Consequently, if Ms. Green and the Gilleys will await the outcome of the litigation in this Court between Ms. Green and the debtors, that course of action should eliminate any problems that might otherwise result from the trial of a separate action. Also, because Mr. Cummings is not a defendant of Ms. Green's action in the state court, his participation in that action for purposes of resolving this claim is unnecessary.

6. *The Gilleys' claim for indemnity against the Cummings:* The Gilleys did not file a timely complaint objecting to the discharge of their contingent indemnity claim against the debtors and the time period for doing so has passed. Consequently, there is no reason to liquidate any debt owed by the debtors to the Gilleys. The participation of the debtors in the state court lawsuit is not, therefore, required for the resolution of the Gilleys claim against them.[19]

A full and fair resolution of all issues involved among all parties to the state court action can and will be had even if the debtors are not required to participate directly in that litigation as party defendants. Therefore, while the convenience that would be gained by requiring the debtors' participation in that litigation weighs in favor of relief from the stay, the fact that their participation in that litigation is not essential and should result in no injustice to the remaining participants in that litigation, is a fact that detracts substantially from the weight that this factor might otherwise carry. Consequently, this factor *does not weigh in favor* of the relief from stay requested by Ms. Green.

19. By order dated January 21, 1998, this Court extended the deadline for the filing, by the Gilleys, of objections to the granting of the debtors' discharges under 11 U.S.C. § 727 and Bankruptcy Rule 4004, as requested by the Gilleys in their motion to extend time, *but not* for the filing of a complaint to determine the dischargeability of their debt under 11 U.S.C. § 523 and Bankruptcy Rule 4007. The pleading filed on January 23, 1998 by the Gilleys in this adversary proceeding entitled "Answer, Cross–Claim, and Motion for Joinder of Claims and Remedies" appears to be (contrary to this Court's order) a complaint requesting a determination under section 523 that the debt for indemnity, if any, owed by the Cummings to the Gilleys, for selling the property to them, is "non-dischargeable based on the false representations and fraud" of the debtors. The pleading contains no allegations relative to section 727 or reference to that code section, or language that tracks the language of that code section, or factual allegations that might fit or match any activity proscribed by that code section. Nor does it use the words "objection to discharge" or any similar language. That pleading must, therefore, either be amended to state a cause of action under section 727 and to omit any claim of the non-dischargeability of the specific debt, or it could be dismissed. The timeliness of any such amended pleading is not now an issue before the Court.

## IV. CONCLUSION

After due consideration of the relevant factors, this Court concludes that the equities weigh in favor of the debtors and against relief from the stay. Paramount in that consideration are the adverse effects that would occur if the debtors were required to litigate issues in state court that Congress intended for this Court to adjudicate. Those include the effects on the debtors' opportunity to obtain a discharge in this case, as well as the diminished benefit of that discharge to the debtors even if they were to be successful in defending that litigation.

Similarly, litigation of Ms. Green's claim in the state court will unduly hinder, impede and delay the closing of this bankruptcy case and the process of determining whether or not the debtors are entitled to a discharge and will materially prejudice the debtors' opportunity to obtain a "fresh start." Retention of the litigation in this Court, not only for the purpose of determining the dischargeability of the debt (if any is owed by the debtors to Ms. Green), but also for the purpose of liquidating that debt, will not deprive Ms. Green of her right to a full hearing on the merits of her claims against the debtors, Dr. Starlin and the Gilleys or preclude either Dr. Starlin or the Gilleys from effectively defending against the claims of Ms. Green in state court. This Court, accordingly, finds that there is insufficient cause under section 362(d) to grant Ms. Green's motion.

It is therefor **ORDERED, ADJUDGED AND DECREED** that the *Motion for Relief from the Automatic Stay* filed by Ms. Maureen Green is **DENIED.**

A status conference on the pending Adversary Proceeding No. 97–00620 will be scheduled by a separate notice.