Justice EISMANN,
specially concurring.
Based upon the issues raised in this case, I concur in the majority opinion. I write only to explain that Ticor did not raise the issue of whether the bankruptcy court had subject matter jurisdiction to resolve its unjust enrichment claim against Stanion. From the record presented on appeal, it does not appear to me that it did. If it did not, then res judicata would not apply.
On October 3, 2003, Stanion filed for Chapter 13 bankruptcy protection in order to save his house from foreclosure. His Chapter 13 plan was confirmed on February 2, 2004, but he had difficulty making the payments due under the plan. He then decided to sell his house and pay all of the creditors’ claims in full. On June 18, 2004, he entered into a contract to sell his house, and on August 4, 2004, the bankruptcy court approved the sale. Ticor was the closing agent. The court ordered that the closing agent pay $36,438.62 from the sale proceeds to the bankruptcy trustee, which sum would be used to pay in full all of the filed and allowed claims in Stanion’s bankruptcy. The sale closed on August 20, 2004, and Ticor wired Stanion the entire net sale proceeds of $124,071.19, apparently under the assumption that he would forward the $36,438.62 to the trustee. He did not do so, and so the bankruptcy court ordered Ticor to turn over the funds that it had wrongly failed to send to the bankruptcy trustee. It ultimately did so, and then filed an action in state court to recover on a claim for unjust enrichment. From the record on appeal, it does not appear that the bankruptcy court would have had subject matter jurisdiction to resolve this state law claim.
Bankruptcy courts are courts of limited jurisdiction. “Title 28, section 1334(b) ere *128 ates federal jurisdiction over ‘civil proceedings arising under title 11 or arising in or related to a case under title 11.’ Thus, for federal bankruptcy jurisdiction to exist, a case must at a minimum ‘relate to’ a case under title 11.” Community Bank of Homestead v. Boone, 52 F.3d 958, 960 (11th Cir.1995). A case does not relate to a case under title 11 merely because the cause of action arose from a transaction related to the bankruptcy.
In the Community Bank case, the Boones had entered into a contract to sell their house after defaulting on their home mortgage. They then filed for bankruptcy protection under Chapter 7 before closing the sale. Community Bank of Homestead (Bank) contended that a “dragnet clause” in the Boones’ home mortgage made the house security for all debts the Boones owed the bank, including a debt owing on a personal guarantee the Boones had executed when obtaining a loan for a corporation they owned. When the Bank sent the closing agent an “estoppel letter” claiming that both debts were secured by the home mortgage, the Boones refused to close because they would not have received any proceeds from the sale of the house. The Boones then instituted a bankruptcy adversary proceeding against the Bank seeking: (1) a determination of the extent of the Bank’s lien on their house; (2) an order compelling the Bank to accept that amount in satisfaction of its lien; and (3) compensatory and punitive damages against the Bank for tortious interference with contract. The bankruptcy court rejected the Bank’s challenge to its jurisdiction on the tortious interference claim and awarded the Boones $10,199 in compensatory damages and $30,596 in punitive damages on that claim. That judgment was vacated on appeal because the bankruptcy court lacked jurisdiction to resolve that claim.
In vacating the judgment, the appellate court stated, “The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy.” Community Bank of Homestead v. Boone, 52 F.3d 958, 960 (11th Cir.1995). The court then held that the Boone’s tort claim could not conceivably affect their bankruptcy estate because the claim, arising post petition, was not property of the estate and the Bank did not have any nondischargeable, unsecured claim that would give it a claim of setoff. The court also held that the bankruptcy did not have jurisdiction over the tort claim merely because that claim shared common factual issues with a claim over which the bankruptcy court did have jurisdiction. “[Although the claim to determine the extent of the Bank’s lien and the tortious interference claim will share the common factual issue of the effect of the dragnet clause, this ‘common issue[ ] of fact between a civil proceeding and a controversy involving the bankruptcy estate does not bring the matter within the scope of § 1334(b).’ ” Id. at 961 (quoting from Miller v. Kemira, Inc., 910 F.2d 784, 789 (11th Cir.1990)). The court also noted that the claim would not affect the Boones’ rights as bankruptcy debtors. “The role of debtor is defined by the panoply of rights and duties arising from the petition in bankruptcy; the outcome of the tortious interference claim will not alter those rights and duties in any way. Hence, ‘[t]o fall within the court’s jurisdiction, the plaintiffs’ claims must affect the estate, not just the debtor.’ ” Id. (quoting from Wood v. Wood, 825 F.2d 90, 94 (5th Cir.1987)).
The cause of action that Ticor seeks to assert against Stanion arose after Stanion had filed his petition in bankruptcy and after the approval of his Chapter 13 plan.[7] The claim arises under state law, not under the bankruptcy laws. It does not appear that the cause of action would in any way impact the bankruptcy estate. Ticor is not seeking to recover from the bankruptcy estate the $36,438.62 it paid to the trustee. It is seeking to recover from Stanion the $36,438.62 that it inadvertently paid to him from the *129 sale proceeds. The money received by Stan-ion is not part of the bankruptcy estate.
After the confirmation of a debtor’s plan, the bankruptcy court may, by stating so in the order confirming the plan, explicitly retain jurisdiction over aspects of the plan related to its administration and interpretation. Fairfield Communities, Inc. v. Daleske, 142 F.3d 1093 (8th Cir.1998). Ticor’s cause of action against Stanion does not, on its face, appear to have anything to do with the administration and interpretation of the Chapter 13 plan. Stanion has not argued that Ticor’s claim was discharged in the bankruptcy. All approved claims filed in Stanion’s bankruptcy have been paid in full, and Stan-ion is entitled to keep the $124,071.19 he received. Any recovery that Ticor may have obtained in this case could not in any way affect Stanion’s bankruptcy estate.
As a general rule, post-confirmation state law claims are not within the jurisdiction of the bankruptcy court. Fairfield Communities, Inc. v. Daleske, 142 F.3d 1093 (8th Cir.1998). “[There is no reason] to protect the debtor from post-confirmation suits bottomed on claims arising after the entry of the order confirming the plan of arrangement.” Id. at 1095 (quoting from In re Morgan & Morgan, Inc., 24 B.R. 518, 521 (Bkrtcy.S.D.N.Y.1982)). Post-confirmation state law claims are generally not within the bankruptcy court’s jurisdiction even when the conduct giving rise to the claim has interfered or could potentially interfere with the debtor’s ability to carry out its obligations under the bankruptcy plan. Eastland Partners Ltd. Partnership v. Brown, 199 B.R. 917 (Bkrtcy.E.D.Mich.1996). The bankruptcy court lacks subject matter jurisdiction even if the bankrupt’s claim is based upon the postconfirmation breach of an existing contract that the bankrupt had assumed as part of its reorganization plan. Craig’s Stores of Texas, Inc. v. Bank of Louisiana, 266 F.3d 388 (5th Cir.2001).
Nevertheless, Ticor did not raise the issue of whether the bankruptcy court would have had subject matter jurisdiction to resolve Ticor’s unjust enrichment claim against Stanion. Since that issue was not raised, I therefore join in the majority opinion.
Chief Justice SCHROEDER concurs.

. After Stanion sold his house, he filed an amended plan, which the bankruptcy court confirmed on July 13, 2005. The amended plan probably set forth his change in plans to pay all bankruptcy claims out of the sale proceeds.